Edwin Kassoff, J.
This action was brought by plaintiff for the return of one month’s rent and a security deposit totaling $464. Plaintiff entered into a written lease agreement with the defendant on or about November 30, 1971 for an apartment in defendant’s building. The lease and occupancy were to commence on March 1,1972. The building in which the apartment was located was under construction when the parties executed the lease. Defendant’s printed form lease contained a clause which provided that if the building was not completed on the date occupancy was to commence, occupancy would begin on the day the building was completed and the three-year period of the lease would commence with occupancy. On or about June 29, 1972 defendant notified plaintiff that the apartment would be ready for occupancy on July 1, 1972, four months after the lease was to commence. On May 12,1972, plaintiff notified defendant that because of the landlord’s delay in construction she was forced to vacate her premises and seek shelter elsewhere. Plaintiff requested that the lease be canceled. Defendant refused to cancel the lease and refused to return the rent and security deposit. At the trial, plaintiff testified that neither the landlord nor his renting agent explained the construction clause to her before she executed the lease. She also testified that she was not represented by an attorney.
The lessees in situations such as this one are usually occasional customers, not acquainted with the carefully drafted legal terms set forth in such printed form leases. The landlord and his agents, assisted by expert legal counsel, carefully draft the lease in language designed solely for the landlord’s protection. When the landlord presents the lease to the lessee for acceptance and execution he is usually fully cognizant of the fact that the other party has not read or bargained for many of the incidental terms of the contract. The terms of the printed contract are usually nonnegotiable. In most cases the tenant is not represented by counsel. The landlord’s position is superior. He not only possesses superior knowledge, but offers a scarce commodity. The lessee is often under an existing lease which usually expires at or about the time the new lease is to become effective. *8 The landlord is a merchant in a sellers’ market place. The word ‘ ‘ merchant ’ ’ as used by this court has the same definition as used in section 2-104 of the Uniform Commercial Code. The code defines merchant as “ a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.” (Italics supplied). If one is a merchant, he has a special skill or a particular knowledge; and for this reason he is held by the court to a completely different set of rules which are generally more strict than the rules that apply to nonmerchants. As a result, one who contracts with a merchant will generally find himself in a more favorable position with the court and protected to a greater extent than if he had contracted with a nonmerchant. A merchant is to be held to a higher standard of conduct by the court.
The lessee that has no choice but to sign an unconscionable lease agreement or not take the premises must be protected against the bad bargain he enters into. The lease in such cases is the equivalent of a consumer contract. The concept of laissezfaire, that is if the purchaser does not agree to lease of the seller he can go elsewhere, has no place in our enlightened society where lessor and lessee do not deal on equal terms and where lessee for all practical purposes does not have the option of shopping around for available renting accommodations of his choice.
The Uniform Commercial Code by its definition applies only to- the sale of goods. However, section 2-302 of the .code which provides “ (1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, -or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any imconscionable clause as to avoid any unconscionable result ”, does not mention the sale of goods. The official comment to section 2-302 of the code states that the purpose of the section is to prevent suppression and unfair surprise by avoiding enforcement of unconscionable contracts made by parties who lacked equal bargaining power. It is this court’s view that the code’s prohibition represents a crystallization of the law’s view toward all such contracts, whether for the sale of goods or otherwise, Although the lease agreement in this case does not come *9 within the scope of section 2-302 of the code, it presents a business pattern closely akin to what the drafters of section 2-302 sought to prohibit, and may be related to the code by analogy.
The notion that an unconscionable bargain should not be given full enforcement is by no means novel. In Scott v. United States (79 U. S. [12 Wall] 443, 445), the Supreme Court stated: ‘ ‘ If a contract be unreasonable * * * but not void for fraud, a court of law will give to the party who sues for its breach damages, not according to its letter, but only such as he is equitably entitled to.” When applying a statute, the courts should consider its objects and purposes and the evils sought to be remedied, and should construe it so as to effectuate the general purposes and suppress the mischief (Casey Development Corp. v. Montgomery County, 212 Md. 138). A statute may be extended by analogy, beyond its apparent boundaries, to include situations which would reasonably have been contemplated by the Legislature in light of the purposes giving impetus to the legislation. (3 Southerland Statutory Construction [3d ed., Horack], § 6005.) Thus, principles of the Uniform Negotiable Instruments Act have been extended beyond the letter of the statute to nonnegotiable instruments (Sheldon v. Blackman, 188 Wis. 4)'. The court reasoned that the Negotiable Instruments Law represented codification of the law on all instruments of debt. Similarly, an Illinois statute authorizing county election contests was held applicable to municipal elections (Harding v. Albert, 373 Ill. 94). A bankruptcy statute, giving a debt ‘ due to the United States ’ ’ priority, was held to apply to a debt due on governmental corporations (Matter of Wilson, 23 F. Supp. 236). A Louisiana statute, imposing on public utilities “ corporations ” the burden of paying expenses, incurred in their investigation by the State’s Public Service Commission, was extended by analogy to natural persons operating a public utility (Gremillion v. Louisiana Pub. Serv. Comm., 186 La. 295). Before the code was enacted, the court in the case of Campbell Soup Co. v. Wentz (172 F. 2d 80) refused to grant specific performance due to the unconscionability of a provision in the contract. Extending the rules embodied in the code, the court in Vitex Mfg. Corp. v. Caribtex Corp. (377 F. 2d 795, 799) which was an action for damages resulting from a breach of contract to supply wool for processing said: ‘ ‘ While this contract is not controlled by the Code, the Code is persuasive here because it embodies the foremost modem legal thought concerning commercial transactions.” In Hirtz Commercial Leasing Corp. v. Transportation Credit Clearing House (59 Misc 2d 226, 229, *10 revd. on other grounds, 64 Mise 2d 910) where section 2-302 was applied to an equipment lease it was said by the court that ‘‘ In view of the great volume of commercial transactions which are entered into by the device of a lease, rather than a sale, it would be anomalous if this large body of commercial transactions were subject to different rules of law than other commercial transactions which tend to the identical economic result. ’ ’ That provisions of uniform acts have been extended to transactions which are within their intent, although perhaps not within their words, is clear (Agar v. Orda, 264 N. Y. 248).
A consideration of applicable case law and of economic reason leads this court to conclude that the principles set forth in section 2-302 of the Uniform Commercial Code should be extended to govern the lease before the court.
The doctrine of unconscionability is used by the courts to protect those who are unable to protect themselves and to prevent injustice, both in consumer and nonconsumer areas.
The plaintiff was presented with a long complex lease, printed in small, practically illegible print. The court finds the lease to contain fifty-four clauses. The lease is four pages long and contains approximately 10,000 words. If typed on 11 by 8% paper, the lease would contain approximately 50 pages of highly technical legal terms, terms not commonly used or understood by the occasional lessee. How can a consumer be expected to fully comprehend or intelligently execute a lease of this length?
Clause number 33 entitled “New Building” states: “ The building being erected on the premises by the Landlord is presently in the course of construction and, notwithstanding anything herein contained to the contrary as to either the commencement and termination of this lease or the provisions of paragraph No. 19 hereof, or any other provisions of this lease, it is agreed that if the building should be completed on a date other than the date set for the commencement of the term hereunder, this lease shall continue in full force and effect, except that the term shall not commence until notice is given, by the landlord to the tenant that the apartment is ready for occupancy by the tenant and the termination date of this lease shall be the last calendar day of the thirty-sixth month from the commencement date set by the landlord in said notice.
Paragraph number 19 entitled “ Failure to Give Possession ” reads in part: “If landlord shall be unable to give possession of the demised premises on the date of the commencement of the term hereof by reason of the fact that the premises are located in a building being constructed and which has not been
*11 sufficiently completed to make the premises ready for occupancy or by reason of the fact that a certificate of occupancy has not been procured or for any other reason, landlord shall not be subject to any liability for the failure to give possession, on said date. Under such circumstances the rent reserved or covenanted to be paid herein shall not commence until the possession of demised premises is given or the premises are available for occupancy by tenant, and no such failure to give possession on the date of commencement of the term shall in any wise affect the validity of this lease or the obligations of tenant hereunder, nor shall same be construed in any wise to extend the term of this lease. The issuance to landlord of a temporary certificate of occupancy shall be deemed conclusive evidence, as against tenant, that the premises are available for occupancy by the tenant”.
These two clauses alone contain 340 words and are separated by some 13 complex legal clauses containing approximately 2,000 words. In Williams v. Walker-Thomas Furniture Co. (350 F. 2d 445) the court found that unequal bargaining powers and the absence of a meaningful choice on the part of one of the parties, together with contract terms which unreasonably favor the other party, may spell out unconscionability. Both clauses are constructed by the landlord for the purpose of guaranteeing full occupancy. Once the consumer enters the merchant’s trap and executes the lease, he is caught in a web from which there is no escape. The two clauses fail to set forth a reasonable period for extension of the time of commencement of the lease and fail to give the tenant the option of canceling the lease agreement if the premises are not ready for occupancy within a reasonable time after the lease was to commence. The court realizes that by not setting forth a time for extending the commencement of lease implies that a reasonable time will apply. However, it is the court’s opinion that the landlord was under an affirmative duty and obligation to set forth a reasonable time limit and thereby relieve lessee of the burden and risk of determining what period of time is reasonable. The landlord merchant was also under an affirmative duty to bring clauses 19 and 33 to the attention of the lessee and to explain their meaning before asking the lessee to execute the lease. Hiding these clauses in a maze of legal terms will not .shield the landlord from his obligations to the lessee.
The court finds these two clauses to be unconscionable and will not enforce them. In doing this, the court in no way seeks to abridge the parties’ right to contract, but merely holds that *12 an expert cannot hide behind legal clauses of this kind when dealing with an occasional lessee that has neither a knowledge of real estate law nor the advice of legal counsel.
Accordingly, the court orders that one month’s rent and one month’s security, totaling $464 be returned to the plaintiff, with interest from May 12,1972.