■ In the Matter of THE STATE OF NEW YORK, Respondent, v AVCO FINANCIAL SERVICE OF NEW YORK, INC., Appellant.—Order and judgment

---

(one paper), Supreme Court, New York County, entered February 6, 1979, which granted an application of the Attorney-General for an injunction prohibiting use of a certain security clause in respondent's loan agreement, affirmed, without costs or disbursements. Following a consumer complaint, the Attorney-General conducted an investigation into the alleged use by appellant (Avco) of a security clause in its loan agreement. As a result, he instituted this proceeding under subdivision 12 of section 63 of the Executive Law, to enjoin as fraudulent and illegal, the persistent use of the clause. Avco is a licensed lender under article 9 of the Banking Law. The clause in question granted Avco a security interest in collateral consisting of "all household goods, furniture, appliances and consumer goods of every kind and description owned at the time of the loan secured thereby". It is undisputed that some or all of the articles in question are household goods which would be exempt from application to the satisfaction of a money judgment except under conditions not here germane (CPLR 5205). Section 9-501 *et seq.* of the Uniform Commercial Code deals with the rights of a secured creditor against a defaulting debtor. Section 9-503 of the Uniform Commercial Code provides for the right of "repossession" upon the debtor's default without resort to judicial process. Thus, we are faced with the anomalous situation where a secured creditor enjoys a right to "repossess" his debtor's household goods, a right not given to a judgment creditor armed with execution. Consumer credit transactions occupy a unique position in our scale of social values. Rare, indeed, is the debtor involved in such a transaction who possesses any real bargaining power in regard to the terms of the loan. He is usually a marginal credit risk, often totally dependent upon finance companies for his credit needs and without power to make any meaningful choice in the terms of the security agreement he is required to sign in order to obtain the loan. In these circumstances, it becomes the function of the court to scrutinize carefully the terms of the agreement presented to him for signature to determine whether or not it is unconscionable. The concept that the court may invalidate a contract by reason of unconscionability is not new to our law. It is specifically provided by statute in connection with sales contracts (Uniform Commercial Code, § 2-302). In at least one situation, it has been applied, by analogy, to the landlord-tenant relationship *(Seabrook v Commuter Housing Co.,* 72 Misc 2d 6). It is equally applicable here. "Whether a contract or any clause of the contract is unconscionable is a matter for the court to decide against the background of the contract's commercial setting, purpose and effect" *(Wilson Trading Corp. v David Ferguson, Ltd.,* 23 NY2d 398, 403). It is applicable in situations which manifest "unequal bargaining powers and the absence of a meaningful choice on the part of one of the parties, together with contract terms which unreasonably favor the other party" *(Seabrook v Commuter Housing Co., supra,* p 11; see, also, *Williams v Walker-Thomas Furniture Co.,* 350 F2d 445). Here, the inequality of bargaining position and the granting to the creditor of enforcement rights greater than those which the law confers upon a judgment creditor armed with execution, lead inevitably to the conclusion that the absence of choice on the part of the debtor left him with no recourse but to grant to his creditor rights which, in good conscience, the law should not enforce. Concur—Kupferman, J. P., Sandler, Bloom and Ross, JJ.

Lupiano, J., dissents in a memorandum, as follows: This is a proceeding brought by the Attorney-General pursuant to subdivision 12 of section 63 of the Executive Law for an injunction against a security clause in respondent Avco Financial Service of New York, Inc.'s (hereinafter Avco), loan agree-

ment form. In the petition it is asserted that the clause "purports to act as a waiver of a judgment debtor personal property exemption as provided by the C.P.L.R. 5205(a)" and as such "is void as against public policy and contrary to law." The clause objected to, as set forth in the petition, is as follows: "This loan is secured by: (a) If check at left, all household goods, furniture, appliances and consumer goods of every kind and description owned at the time of the loan secured hereby, or at the time of any refinance or renewal thereof or cash advanced under the loan agreement secured hereby, and located about the premises at the Debtor's residence (unless otherwise stated) or at any other location to which the goods may be moved." Special Term granted the application, finding that "The clause at issue gives the respondent finance company a security interest in * * * household and personal property which it did not sell to the borrower and which is exempt from enforcement of money judgments by statute" and thus "is invalid." The clear and narrow issue thus raised on this record is whether the subject security clause amounted to a waiver of the exemption provided for in CPLR 5205 (subd [a]). CPLR 5205 is entitled "Personal property exempt from application to the satisfaction of money judgments" and subdivision (a) thereof, entitled "Exemption for personal property" lists the various items of personalty which when owned are "exempt from application to the satisfaction of a money judgment except where the judgment is for the purchase price of the exempt property or was recovered by a domestic, laboring person or mechanic for work performed by that person in such capacity". It is stated that "The right of a debtor to hold his property, or any part of it, free from the claims of creditors is not a common-law right, but rather a statutory one. It is a privilege—a mere grace or favor dependent on the will of the state and granted on grounds of public policy for a humane and generous purpose.· Exemption is not a vested right, but one the validity of which is to be determined, in most instances, by the conditions which exist at the time the privilege is claimed" (22 NY Jur, Exemptions, § 1). The householder's exemption delineated in CPLR 5205 (subd [a]) depends on the nature of the proceedings for seizing property for the purpose of subjecting it to the payments of debts (see 22 NY Jur, Exemptions, § 2). Thus, CPLR 5205 (subd [a]) applies to proceedings involving "the satisfaction of money judgments" and to no other proceeding. Heretofore it has been recognized that "In general, any property which is capable of absolute sale may be mortgaged * * * It does not matter that the property is exempt from attachment and from levy and sale upon execution, for such exemption is merely a privilege which the law confers upon a debtor, *and not a limitation imposed upon his power to dispose of his own property as he may choose*" (1 Jones, Chattel Mortgages and Conditional Sales [6th ed], § 114; emphasis supplied). In *Matter of Brooklyn Loan Corp. v Gross* (259 App Div 165, 166), the appellate court, while recognizing that in the absence of a statute permitting him to do so, a householder may not consent to waive the exemption (now set forth in CPLR 5205, subd [a]) because such exemption rests upon public policy, he, nevertheless, "may mortgage property which is exempt from levy and sale upon execution * * * But, 'If the creditor, instead of foreclosing, obtains judgment upon the mortgage debt, and levies upon the property mortgaged,' as was done in the instant case, 'the debtor may claim his exemption'". Thus, the rule is "that in the absence of any statutory prohibition, exempt property may be mortgaged or pledged. However, while an owner may mortgage personal property which is exempt from levy and sale upon execution, the debtor may claim his exemption if the creditor, instead of foreclosing, obtains a judgment upon the mortgage debt

and levies upon the mortgaged property" (22 NY Jur, Exemptions, § 61). Heretofore existing legislation dealing with security devices, such as chattel mortgages, conditional sales, trust receipts, factor's liens and assignments of accounts receivable, has been superseded by article 9 of the Uniform Commercial Code. Subdivision (1) of section 9-102 of the Uniform Commercial Code provides in pertinent part that "this Article applies so far as concerns *any personal property* * * * within the jurisdiction of this State (a) to any transaction (regardless of its forum) which is intended to create a security interest in personal property" (emphasis supplied). Section 9-501 of the Uniform Commercial Code grants a secured party a choice of remedies which he may employ in the event of default by the debtor as, for example, reducing the claim to judgment, foreclosing or otherwise enforcing the security interest by any available judicial procedure. It is further provided in section 9-503 of the Uniform Commercial Code that "Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. If the security agreement so provides the secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. Without removal a secured party may render equipment unusable, and may dispose of collateral on the debtor's premises under Section 9-504." It is clear, therefore, that under article 9, the secured party is not mandated to reduce his claim to a money judgment. Both CPLR article 52 dealing with the enforcement of money judgments and article 9 of the Uniform Commercial Code dealing with secured transactions are legislative enactments and relate to distinct concerns without inherent incompatibility. Accordingly, it is clear that the subject security clause objected to by the Attorney-General does not amount to a waiver of the exemption provided for in CPLR 5205 (subd [a]). Assuming the Attorney-General to be correct in his assertion that in some manner the self-help embodied in Avco's clause tends to defeat legislative intent, the remedy lies with the Legislature and not with judicial fiat. Accordingly, the judgment and order (one paper) of the Supreme Court, New York County, entered February 6, 1979, which granted an application of the Attorney-General for an injunction against a security clause in respondent's loan agreement form, should be reversed, on the law, and the application denied, with costs and disbursements.