OPINION OF THE COURT
George M. Fleary, J.
There are two issues to be decided in this case: (1) whether the landlord petitioner’s attorney may collect from the tenant respondent for the legal work performed in preparation of the petition and notice of petition, and (2) under what circumstances may a tenant recover damages in the landlord-tenant proceeding as a result of lost wages due to petitioner landlord’s failure to provide services in the subject premises.
The facts are not in material dispute. The eviction proceeding began by the service of the within petition and notice of petition upon the tenant herein. The petition demanded rent arrears for the months of July, 1979 and August, 1979 at the rate of $288 per month and a late charge of $10 and legal fees of $26. This court processed the case as a result of an order to show cause restoring a default and placing the matter on the Trial Calendar of this court.
It is ancient learning that real property actions are governed by statute. The contents of petitions are controlled by section 741 of the Real Property Actions and Proceedings Law which reads as follows:
"§ 741. Contents of Petition.
"The petition shall * * *
"1. State the interest of the petitioner in the premises from which removal is sought.
"2. State the respondent’s interest in the premises and his relationship to petitioner with regard thereto.
"3. Describe the premises from which removal is sought.
*588 "4. State the facts upon which the special proceeding is based.
"5. State the relief sought. The relief may include a judgment for rent due * * * if the notice of petition contains a notice that a demand for such a judgment has been made.”
Nowhere in section 741 is there authority to demand attorney’s fees as against a tenant. It is a violation of the canons of ethics for an attorney to represent both the landlord and the tenant at the same time. This is a clear conflict of interest. The tenant never retained the landlord’s attorney nor did the tenant ever agree to be represented by the landlord’s attorney. Hence, how can the tenant now be charged legal fees by the landlord’s attorney when the lawyer never performed services on behalf of the tenant?
Canon 5 of the Code of Professional Responsibility provides that "A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client”. Ethical Consideration 5-1 of the Code of Professional Responsibility provides: "The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of his client and free of compromising influences and loyalties. Neither his personal interests, the interests of other clients, nor the desires of third persons should be permitted to dilute his loyalty to his client.”
Ethical Consideration 5-14 provides: "Maintaining the independence of professional judgment required of a lawyer precludes his acceptance or continuation of employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client. This problem arises whenever a lawyer is asked to represent two or more clients who may have differing interests, whether such interests be conflicting, inconsistent, diverse, or otherwise discordant.”
Ethical Consideration 5-15 provides in part: "If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should resolve all doubts against the propriety of the representation. A lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests.”
*589 Disciplinary Rule 5-105 of the Code of Professional Responsibility provides in part:
"Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer * * *
"(C) In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.”
This court is not unmindful of the fact that there is a claim that the tenant is bound by the provisions of the lease which was accepted as petitioner’s Exhibit No. 1 in evidence, and in which paragraph 7 provides that the attorney’s fees are to be part of the rent damages. The landlord urges that the lease between the parties is a valid contract and consequently binds the parties.
Chief Judge of the New York Court of Appeals, Lawrence H. Cooke, at the annual meeting of the Legal Aid Society, on October 23, 1979, at the Association of the Bar of the City of New York, stated the following in his address, which was reported in the New York Law Journal (Oct. 24, 1979, p 7, cols 1-3): "Now, more than ever, with the tentacles of complex laws penetrating into almost every phase of personal and business affairs, the profession must act forcefully and pragmatically, if the sytem as a whole is to function effectively. Representation will have to be furnished methodically and not haphazardly to insure that all who need legal services are able to obtain them. The mandate of Canon 2 and the exactions of Ethical Consideration 2-25 that '(t)he rendition of free legal service to those unable to pay * * * continues to be an obligation of each lawyer,’ that 'other * * * programs * * * will be developed by the profession’ and that '(e)very lawyer should support all proper efforts to meet this need for legal services’ ”.
The petition, herein, demands a $10 late charge, while the lease relied on by the petitioner provides, in paragraph 32, that there shall be a $5 late charge.
The tenant occupies its apartment under a printed-form lease, one of several such forms that regulate virtually all residential tenancies in this city. The unusual legal and social character of these instruments has only recently become the *590 subject of critical judicial scrutiny (Seabrook v Commuter Housing Co., 72 Misc 2d 6).
From the most cursory examination of any of these residential lease forms, it is immediately apparent that they have been carefully, painstakingly designed to provide maximum protection for the landlords and to give only the most grudging, minimal recognition to the reasonable expectations of residential tenants. Not one of these widely used forms comes close to representing an equitable bargain and yet it is a simple statement of fact that most people cannot rent an apartment in this city — cannot, in fact, live here, unless they sign one of these printed-form leases.
Several circumstances have combined to bring about this remarkable situation. As has already been observed judically, few residential tenants retain attorneys in connection with signing of leases and the complications and legalistic language in which they are phrased discourages close study or understanding (Seabrook v Commuter Housing Co., supra). More important, the tenant has no way in which to alter, modify or amend the proffered lease form in the event he needs and desires the apartment.
Obviously, these form leases fall within the familiar rule that any ambiguity in the language is to be resolved against the author. It is equally clear that these forms are studded with provisions which call for the unhesitating application of the doctrine of unconscionability when their terms bring about clearly unjust consequences (see Seabrook v Commuter Housing Co., supra; cf. Tai on Luck Corp. v Cirota, 35 AD2d 380).
The court recognizes section 234 of the Real Property Law which provides as follows: "§ 234. Tenants’ right to recover attorneys’ fees in actions or summary proceedings arising out of leases of residential property. Whenever a lease of residential property shall provide that in any action or summary proceeding the landlord may recover attorneys’ fees and/or expenses incurred as the result of the failure of the tenant to perform any covenant or agreement contained in such lease, or that amounts paid by the landlord therefor shall be paid by the tenant as additional rent, there shall be implied in such lease a covenant by the landlord to pay to the tenant the reasonable attorneys’ fees and/or expenses incurred by the tenant as the result of the failure of the landlord to perform any covenant or agreement on its part to be performed under *591 the lease or in the successful defense of any action or summary proceeding commenced by the landlord against the tenant arising out of the lease, and an agreement that such fees and expenses may be recovered as provided by law in an action commenced against the landlord or by way of counterclaim in any action or summary proceeding commenced by the landlord against the tenant. Any waiver of this section shall be void as against public policy.”
This section provides reciprocity by statute for reciprocal attorney’s fees in that tenant’s attorney may recover fees where landlord’s attorney is permitted legal fees. The legislative intent was for tenant’s attorney to recover fees, not the landlord’s attorney. In any event, in this case, the tenant appeared pro se and was not represented by counsel.
The strong mandate for lawyers to protect the poor as insinuated by Chief Judge Cooke certainly requires Judges sitting in a Housing Part milieux to protect litigants. Therefore this court holds that the common practice of landlords’ attorneys demanding legal fees from tenants is illegal and unconscionable, notwithstanding the provision for same in a lease. This demand for legal fees is made regularly, even in cases where there is no lease.
The second branch of this decision deals with a counterclaim interposed in the court against the petitioner in order to provide a setoff against rents, for the landlord’s failure to provide services.
The rule, accepted until recently, that separated the landlords’ right to rent from their duty to provide services as required by law, has been thoroughly sapped of vitality (Javins v First Nat. Realty Corp., 428 F2d 1071, cert den 400 US 925; Marini v Ireland, 56 NJ 130; Boston Housing Auth. v Hemingway, 363 Mass 184; Amanuensis Ltd. v Brown, 65 Misc 2d 15; Morbeth Realty Corp. v Rosenshine, 67 Misc 2d 325; Ann. 40 ALR3d 646; cf. 57 E. 54 Realty Corp. v Gay Nineties Realty Corp., 71 Misc 2d 353). The product of a peculiar complex of historical circumstances is obviously inappropriate to contemporary urban realities, and is utterly discordant with the almost universal rule in our society that is based upon the interdependence of rights and duties (see, e.g., Javins v First Nat. Realty Corp., supra; Quinn and Phillips, The Law of Landlord-Tenant: A Critical Evaluation of the Past with Guidelines for the Future, 38 Fordham L Rev 225; American *592 Bar Federation, Model Residential Landlord-Tenant Code [Tentative Draft, 1969], comment to § 1.102).
In this case, the tenant occupied an apartment on the 21st floor of a 22-story highrise structure. Uncontroverted evidence established that the elevator was out of service for seven days and as a consequence thereof, tenant could not get down to go to work and lost pay. The tenant testified that he earned $60 per day and lost seven days’ work during the time the elevator in his building was not in service.
Under the developing doctrine of implied warranty of habitability, I have determined that a setoff against the rent exists that should fairly approximate the damages sustained by the tenant.
Section 78 of the Multiple Dwelling Law provides that "Every multiple dwelling, including its roof or roofs, and every part thereof and the lot upon which it is situated, shall be kept in good repair.”
Inasmuch as the landlord is vested with the ultimate control and responsibility for the building, it is he who has a corresponding nondelegable and nonwaivable duty to maintain it. The obligation of the tenant to pay rent is dependent upon the landlord’s satisfactory maintenance of the premises in habitable condition. (Park West Mgt. Corp. v Mitchell, 47 NY2d 316, 327.)
The clearest indication that New York recognizes warranty liability in the lease of real property comes from the recent Court of Appeals decision in Park West (supra) in which a unanimous court held that the failure of a landlord to provide adequate sanitation removal, janitorial and maintenance services materially impacted upon the health and safety of the tenants and permitted an abatement in rent due to the landlord’s breach of warranty of habitability. In that case a 10% reduction in rent ordered by the Civil Court was sustained.
Accordingly, this court grants judgment in favor of the landlord herein for rent through August, 1979 in the sum of $576, without costs, and with no legal fees and this court further grants a setoff in favor of the tenant as against the landlord in the sum of $420 representing seven days’ lost pay at $60 per day.
Judgment for landlord, $156, without costs; 10 days’ stay.