OPINION OF THE COURT
Harry Edelstein, J.
The petitioner herein has brought a summary proceeding to evict the respondent tenant for nonpayment of rent. On the return date, January 12,1982, the parties appeared and the respondent answered orally. She alleged that the landlord has refused to accept her rent which she had tendered on two occasions because she refused to pay a $50 late fee. She subsequently submitted an answer in writing, dated January 15, 1982, a copy of which was delivered to the attorney for petitioner.
The petition claimed that the rent for December, 1981, of $405; January, 1982 of $405; December, 1981, late fee of $50, and bad check charge of $10, for a total of $870 was due. The respondent, in her answer, states that the check she tendered for the November rent was returned by the bank since her paycheck had not cleared. The landlord has charged her in the petition with a “bad check” fee of $10 for the returned item. The additional $50 late fee, the petition claims, is due since the rent was not paid within the first 10 days of the month. The tenant, in her answer, further alleges that the rents for December and January were paid, but the petitioner landlord has refused on two occasions to accept the November rent unless she pays the $50 late charge.
*787 I
Paragraph 37 of the current lease between the parties provides for a $10 service charge for returned checks, and paragraph 38 provides for a “service fee of $50.00 as additional rent” for rent not paid by the 10th of the month. (Emphasis added.) The words “$50 as additional rent” are typed in while the printed portion of “$20.00” has been crossed out. The respondent, in her answer, claims that the previous lease had a $10 service fee.
This late fee is excessive and grossly disproportionate to the amount of damages, if any. The monthly rent under this lease is $405. If the tenant must pay $50 on the 11th day of the month, this would amount to an annual interest rate of about 450%! The landlord of course incurs no damage of such magnitude and the fee is therefore disproportionate. The late fee cannot be considered a reasonable means of insuring prompt payments. The landlord already has legal recourse through summary proceeding for nonpayment of rent when due.
The court holds that this fee is to be considered liquidated damages and a penalty which cannot stand. (Truck Rent-A-Center v Puritan Farms 2nd, 41 NY2d 420, 424; Hankin v Armstrong, NYU, Jan. 20,1982, p 14, col 1 [App Term, 2d Dept].)
II
The question before this court, as in Weidman v Tomaselli (81 Misc 2d 328, affd 84 Misc 2d 782), is the validity of a lease clause, here paragraph 38. In considering the doctrine of a contract of adhesion, the court must look for the elements of a contract of adhesion. In the Weidman case (81 Misc 2d 328, 331, supra), it was held that these elements are “(1) a necessity of life; (2) a contract for the excessive benefit of the offeror; (3) an economic or other advantage of the offeror; and (4) the offer of the proposed contract on a take it or leave it basis.” There, as in this case, the contract was drafted by or for the landlord for the tenant’s shelter. “[I]t is immediately apparent that [these leases] have been carefully, painstakingly designed to provide maximum protection for the landlords and to give only the most grudging, minimal recognition to the reasonable *788 expectations of residential tenants. Not one of these * * * forms comes close to representing an equitable bargain”. (Bay Park One Co. v Crosby, 101 Misc 2d 586, 590.)
The court holds that the provision for the late fee presented by the landlord to a prospective tenant in a residential lease under the circumstances herein constitutes a penalty, is unconscionable and is void. (Bay Park One Co. v Crosby, supra; Weidman v Tomaselli, supra.)
Ill
This late fee is invalid for another reason. The premises owned by the landlord, and in which this tenant has leased an apartment, are located in Spring Valley, New York. This community is subject to the Emergency Tenant Protection Act of 1974 (L 1974, ch 576 [Act, ETPA]). This is conceded by the petitioner in paragraph 9b of the petition. The Act was enacted “to prevent the exaction of unreasonable and oppressive rents and rental agreements.” (Matter of Century Operating Corp. v Marrero, 103 Misc 2d 37, 41.) The State Division of Housing and Community Renewal (Division) is empowered to adopt regulations which “prescribe standards with respect to the terms and conditions of new and renewal leases, additional rent and such related matters * * * so as to insure that the level of rent adjustments authorized under this law will not be subverted and made ineffective.” (ETPA, § 10; see 9 NYCRR Part 2500 et seq.)
The landlord may only charge that “legal regulated rent” as is determined by these regulations. (9 NYCRR 2500.2 [e]; 2501.2, 2502.1 et seq.) The landlord may not increase the legal regulated rent unless it is approved by the Division according to the procedures in 9 NYCRR Part 2502.
The petitioner’s lease, paragraph 38, clearly defines the $50 late fee as “additional rent”. The regulations define rent as “[consideration, including any bonus, benefit or gratuity demanded or received for or in connection with the use or occupancy of housing accommodations”. (9 NYCRR 2500.2 [d].) It must establish that such “additional rent” was granted on a proper application made to the Division. The tenant’s answer states that her previous *789 lease had a late fee of only $10. The $50 late fee defined as “additional rent” has not been approved by the Division.
The regulations of rent levels under the ETPA protects tenants from the same “take it or leave it” basis that a contract of adhesion presents. If landlords unilaterally change such late fees, and define them as “additional rent” without Division approval, such a “subversion” of the Act’s goals and rent levels would result, that the above-cited regulations have been designed to avoid. (ETPA, § 10; Matter of Century Operating Corp. v Marrero, supra.)
Accordingly, the late fee charge is denied, and the only issue that remains before the court is whether or not the December and January rent and the bad check charge have been paid. If these matters are still in issue, then the petitioner must file a note of issue to place this on the summary proceeding calendar for trial.