OPINION OF THE COURT
Ellen M. Yacknin, J.
Introduction
Plaintiff Chili Venture LLC has sued defendant Debra Stahl for $7,974.22 in money damages and legal fees associated with defendant’s rental of a unit in plaintiffs apartment complex in Chili, New York. The summons and complaint were served personally on defendant on April 27, 2016. Defendant has not answered the summons and complaint.
Plaintiff has now submitted an ex parte motion for entry of a default judgment against defendant that raises various claims for damages. Because defendant has failed to respond to plaintiffs complaint, the factual allegations regarding defendant’s liability are presumed to be true. Nonetheless, the court must analyze plaintiff’s various claims under applicable law.
To obtain a judgment against a defaulting defendant, a plaintiff must submit “the requisite proof” that it is entitled to the requested judgment. (CPLR 3215 [a].) Such proof must include proof of “the facts constituting the claim, the default and the amount due.” (CPLR 3215 [f].) To satisfy the factual proof requirements of CPLR 3215, a plaintiff must submit documentation demonstrating that “a viable cause of action exists.” (Woodson v Mendon Leasing Corp., 100 NY2d 62, 71 [2003]; see Walley v Leatherstocking Healthcare, LLC, 79 AD3d *463 1236, 1238 [3d Dept 2010].) The court’s legal analysis with respect to plaintiffs various claims is discussed below.
Factual Background
According to plaintiffs complaint and supporting documents, plaintiff and defendant signed a written lease for the rental of an apartment in plaintiffs apartment complex on April 15, 2010. At that time, defendant gave plaintiff a security deposit of $1,400. On February 21, 2014, plaintiff and defendant signed a lease renewal agreement for a one-year term from March 31, 2014 through March 31, 2015.
Plaintiff commenced a summary eviction proceeding in Chili Town Court against defendant for alleged nonpayment of rent on October 1, 2014. On October 16, 2014, the court granted plaintiffs petition to recover possession of the premises and issued a warrant of eviction against defendant, but did not award money damages because defendant was not personally served with the petition.[1] Plaintiff now seeks entry of a default judgment against defendant in the amount of $7,149.22 for back rent, late fees, accelerated rent, gas and electric charges, and attorney’s fees.
October 2014 Rent and Late Fees
Pursuant to the parties’ February 21, 2014 lease renewal, defendant was required to pay $845 in monthly rent, plus a $40 pet fee by the first of every month. Plaintiff alleges that defendant failed to pay all but 340 of her October 2014 rent and pet fee. Accordingly, plaintiff is entitled to recover $884.66 for October 2014’s rent and pet fee from defendant.
Plaintiff seeks $106 for late fees related to defendant’s failure to pay October 2014 rent. The parties’ lease provides that the landlord is entitled to a late fee of $50 for monthly rent that is not paid by the third of the month, plus an additional $2 per day that the rent remains unpaid. The court finds that a monthly fee of more than $50 for late rent is unconscionable as a matter of law. (See Real Property Law § 235-c [1]; Spring Val. Gardens Assoc. v Earle, 112 Misc 2d 786, 787 [Rockland County Ct 1982]; Rock v Klepper, 23 Misc 3d 1103[A], 2009 NY Slip Op 50558[U], *6 [Plattsburgh City Ct 2009]; VP Vil. Park, LLC v Victor, 40 Misc 3d 1233[A], 2013 NY Slip Op 51418[U], *3-4 *464 [Pleasant Valley Just Ct 2013].) Accordingly, plaintiff is entitled to recover $50 for October 2014’s late fee.
Accelerated Rent
According to the parties’ lease, the tenant is required to pay all future rent due under the lease if the “Lease is canceled, or Landlord takes back the Apartment.” Whether defendant, an evicted tenant, is liable for future rent under the lease’s accelerated rent clause in her residential lease is the issue presented by plaintiff’s motion.
RPAPL 749 (3) provides that the issuance of a warrant of eviction “cancels the agreement under which the person removed held the premises, and annuls the relation [ship] [between the] landlord and tenant.” Stated differently, a judgment of eviction terminates a lease between a landlord and tenant as a matter of law. (See Matter of Lazy Acres Park, LLC v Ferretti, 118 AD3d 1406 [2014], lv denied 120 AD3d 1612 [4th Dept 2014], lv dismissed 25 NY3d 965 [2015]; Matter of First Citizens Natl. Bank v Koronowski, 46 AD3d 1474, 1475 [4th Dept 2007]; Weichert v O’Neill, 245 AD2d 1121 [4th Dept 1997].) For this reason, an evicted tenant is generally not liable for rent that would have been owed for the remainder of the lease’s term.
Plaintiff claims that it is nevertheless entitled to accelerated rent from defendant because the lease’s accelerated rent provision supersedes RPAPL 749 (3). In 1995, the Court of Appeals examined the enforceability of a commercial lease’s rent acceleration clause in the context of a commercial tenant that voluntarily abandoned the premises. In Holy Props, v Cole Prods. (87 NY2d 130 [1995]), the Court held that under these circumstances, a landlord has no duty to mitigate damages under a commercial lease’s rent acceleration clause.
In Rios v Carrillo (53 AD3d 111 [2d Dept 2008]), the Second Department clarified that the Holy Props, ruling extends in similar circumstances to rent acceleration clauses in residential leases. Specifically, in a case involving a residential tenant who voluntarily abandoned the premises, the Rios Court held that unless a surrender of the lease by operation of law had occurred, the landlord was entitled to enforce the lease’s rent acceleration clause without attempting to mitigate damages. (See Rios v Carrillo, 53 AD3d at 114.) However, because the lower court had not considered whether a surrender of the lease by operation of law, which would have terminated the parties’ lease obligations to each other, had taken place, the Rios Court remanded the case for the lower court to do so.
*465 A surrender of a lease by operation of law occurs “when the parties to a lease both do some act so inconsistent with the landlord-tenant relationship that it indicates their intent to deem the lease terminated.” (Riverside Research Inst. v KMGA, Inc., 68 NY2d 689, 691-692 [1986].) In this case, both parties manifestly acted inconsistently with their landlord-tenant relationship. Defendant failed to pay her rent. Plaintiff sought and obtained a court-ordered warrant of eviction against defendant. Under these circumstances, as the Second Department has held, “ ‘[t]he issuance of the warrant of eviction terminated any existing tenancy and annulled the landlord-tenant relationship by operation of law.’ ” (Frey v Rose, 51 AD3d 859, 861 [2d Dept 2008], citing Rocar Realty Northeast, Inc. v Jefferson Val. Mall Ltd. Partnership, 38 AD3d 744, 747 [2d Dept 2007]; see RPAPL 749 [3].)
The Rocar Realty Court held that a lease provision requiring the landlord to pay the tenant for improvements to the premises was nullified because the tenant’s eviction annulled the landlord-tenant relationship by operation of law. (See Rocar Realty, 38 AD3d at 747.) Similarly, the Frey v Rose Court held that a lease provision requiring the landlord to extend the assignee’s rental term was nullified because the tenant’s eviction annulled the landlord-tenant relationship by operation of law. (See Frey v Rose, 51 AD3d at 861; see also Chestnut Realty Corp. v Kaminsky, 132 AD3d 797, 798 [2d Dept 2015] [because “there was a surrender of the parties’ lease by operation of law . . . the defendants are not liable for the rental arrears at issue”]; Benderson v Poss, 142 AD2d 937 [4th Dept 1988] [landlord who locked tenant out of premises not entitled to future rent].)
As in Rocar Realty and Frey v Rose, the issuance of the warrant of eviction in this case annulled the landlord-tenant relationship by operation of law. Consequently, as in Rocar Realty and Frey v Rose, the lease’s accelerated rent provision was nullified upon the issuance of the warrant of eviction, and is therefore unenforceable. (But cf. H.L. Realty, LLC v Edwards, 131 AD3d 573, 575 [2d Dept 2015] [commercial lease’s accelerated rent clause enforceable following tenant’s eviction].)
Regardless of whether the lease in this action was surrendered by operation of law, the acceleration clause in the parties’ residential lease in this action is also unenforceable because it is unconscionable. Under Real Property Law § 235-c (1), when a court finds, as a matter of law, that a lease provi *466 sion is unconscionable, a court may decline to enforce the unconscionable clause or limit its application to avoid an unconscionable result.
The Court of Appeals has emphasized that an accelerated rent clause is enforceable only if “ ‘the clause is neither unconscionable nor contrary to public policy.’ ” (172 Van Duzer Realty Corp. v Globe Alumni Student Assistance Assn., Inc., 24 NY3d 528, 536 [2014].) Whether a lease provision is unconscionable “is a question of law, giving due consideration to the nature of the contract and the circumstances.” (172 Van Duzer Realty Corp., 24 NY3d at 536, quoting JMD Holding Corp. v Congress Fin. Corp., 4 NY3d 373, 379 [2005].)
This court finds, as a matter of law, that the accelerated rent clause in the parties’ residential lease is unconscionable because it abrogates a residential tenant’s statutory right in a contract of adhesion. An agreement between two parties is a contract of adhesion when “[it] contains terms that are unfair and nonnegotiable and arises from a disparity of bargaining power or oppressive tactics.” (Molino v Sagamore, 105 AD3d 922, 923 [2d Dept 2013], quoting Matter of Love’M Sheltering, Inc. v County of Suffolk, 33 AD3d 923, 924 [2d Dept 2006]; see VP Vil. Park, LLC v Victor, 2013 NY Slip Op 51418[U], *3.) In evaluating whether a contract is one of adhesion, a court must consider the following factors: (1) whether the contract involves a necessity of life; (2) whether the contract terms excessively benefit the offeror; (3) whether the contract provision provides an economic or other advantage to the offeror; and (4) whether the proposed contract is offered on a take it or leave it basis. (See Spring Val. Gardens Assoc. v Earle, 112 Misc 2d 786, 787 [Rockland County Ct 1982]; Weidman v Tomaselli, 81 Misc 2d 328 [Rockland County Ct 1975], affd 84 Misc 2d 782 [App Term, 2d Dept, 9th & 10th Jud Dists 1975].)
The parties’ lease in this action reflects all the elements of a contract of adhesion. The lease involves housing for defendant, a basic necessity of life. The lease includes many provisions that overwhelmingly benefit plaintiff to the detriment of defendant and demonstrate a grossly inequitable bargain between the parties.[2] Many of the lease provisions, including its accelerated rent clause, provide a considerable economic advantage to the plaintiff. Finally, the parties’ lease was unmistakably not *467 the product of arm’s length negotiations between equally sophisticated parties. (See Medlock Crossing Shopping Ctr. Duluth, GA. LP v Kitchen & Bath Studio, Inc., 126 AD3d 1463, 1464 [4th Dept 2015]; Wagner v Ploch, 85 AD3d 1547, 1548 [4th Dept 2011].) To the contrary, it is evident that the lease was drafted exclusively by plaintiff, and that if defendant wanted to lease the apartment, she had no choice but to consent to it in its entirety.
The existence of the fourth element of an adhesion contract in this case is underscored by the fact that the parties did not sign the lease until April 15, 2010, almost a month after the lease’s March 10, 2010 start date. Apparently, defendant had already moved into the apartment before she was given a copy of the lease to read and sign. Clearly, if she had raised any concerns about any particular clause, she would have been forced to move out of her apartment less than a month after she moved in.
Plainly, then, the lease in this action is a contract of adhesion. As noted above, the lease’s accelerated rent clause contradicts the public policy considerations incorporated in RPAPL 749 (3), which provides that issuance of a warrant of eviction cancels each party’s lease obligations to each other. When a provision in an adhesion lease abrogates public policy as reflected in a person’s statutory rights, New York State courts have not hesitated to nullify the lease provision as unconscionable and unenforceable as a matter of law. (See e.g. Wagner v Waterman Estates, LLC, 128 AD3d 1504, 1507 [4th Dept 2015]; Wagner v Ploch, 85 AD3d at 1548; Extell Belnord LLC v Uppman, 113 AD3d 1, 10 [1st Dept 2013]; Drucker v Mauro, 30 AD3d 37, 39 [1st Dept 2006], appeal dismissed 7 NY3d 844 [2006]; Blecher v Colletti, 154 Misc 2d 760, 761 [App Term, 2d Dept, 2d & 11th Jud Dists 1993]; Spring Val. Gardens Assoc. v Earle, 112 Misc 2d at 788-789; Cooper v Back on Track Group, Inc., 45 Misc 3d 623, 630 [Civ Ct, Kings County 2014]; McCormick v Resurrection Homes, 38 Misc 3d 847, 850-851 [Civ Ct, Kings County 2012]; Ross v Genova, 52 Misc 3d 1205[A], 2016 NY Slip Op 51040[U], *3 [Civ Ct, Kings County 2016].)
For reasons similar to those underlying the decisions cited above, at least two New York State courts have held that a residential lease’s rent acceleration clause in an adhesion lease is unconscionable and therefore unenforceable. (See Knudsen v Lax, 17 Misc 3d 350 [Watertown City Ct 2007]; Jonassen v *468 Kirtland, 24 Misc 3d 1241[A], 2009 NY Slip Op 51838[U] [Ithaca City Ct 2009].) This court concurs with the legal analyses and conclusions of these courts, and declines to enforce the residential lease’s rent acceleration clause following defendant’s eviction in this action as unconscionable.[3] Cleaning and Repair Costs
Plaintiff asserts that defendant is liable for damages associated with her former apartment. Specifically, plaintiff seeks $400 for priming and painting the unit; $54 for cleaning the unit; $100 for repairing holes in the living room wall; $108 for removing garbage; and $108 for exterminating fleas.
Generally, a tenant is financially liable for the cost of repairs to an apartment if the tenant “caused damage beyond that attributable to ordinary wear and tear.” (Strafaci v Meadowbrook Pointe Dev. Corp., 33 Misc 3d 142[A], 2011 NY Slip Op 52208[U], *2 [App Term, 2d Dept, 9th & 10th Jud Dists 2011]; see Kamara v Pavia, 11 Misc 3d 1051[A], 2006 NY Slip Op 50172[U], *4 [Rochester City Ct 2006]; McCormick v Moran, 182 Misc 2d 568, 569 [Watertown City Ct 1999].) In this case, plaintiff’s documents demonstrate that defendant’s apartment “was a disaster” after she was evicted. Although the priming and painting charges appear to be excessive, additional work was necessary “due to nicotine.”
Plaintiff adequately demonstrates that the charges assessed to defendant are for damages to the unit that were beyond ordinary wear and tear. For this reason, defendant is liable to plaintiff for $770 for property damages.
Gas and Electricity Charges
Plaintiff seeks $633.56 from defendant for gas and electric charges from November 2014 through March 2015, well after she was evicted on October 16, 2014. To recover such damages from defendant, plaintiff relies on a lease clause that provides: “Tenant agrees to remain, at all times, financially responsible for the Gas & Electric service in the apartment while actively on a Lease agreement.”
*469 After she was evicted, however, defendant was no longer “actively on a Lease agreement.” (See RPAPL 749 [3].) For this reason, this lease provision does not entitle plaintiff to recover from defendant the cost of gas or electric services for November 2014 through March 2015.[4]
Legal Fees
Plaintiff seeks legal fees related to both defendant’s October 2014 eviction proceeding and this action. Under the lease, defendant is liable for reasonable attorney’s fees incurred by plaintiff to enforce defendant’s lease obligations. The court finds that plaintiff is entitled to a reasonable attorney’s fee of $350 for the eviction proceeding and $250 for this action, for a total of $600. (See Fiberglass Fabricators, Inc. v C.O. Falter Constr. Corp., 117 AD3d 1540, 1541 [4th Dept 2014].)
Conclusion
For the reasons discussed above, plaintiff is entitled to damages related to its various claims in the amount of $1,704.66, plus $600 in attorney’s fees, for a total of $2,304.66. As previously noted, though, defendant gave plaintiff a $1,400 security deposit when she rented the apartment in the spring of 2010. There is no indication in plaintiff’s motion papers that plaintiff returned defendant’s security deposit to defendant. Accordingly, plaintiff is entitled to entry of a default judgment against defendant for damages and attorney’s fees in the amount of $904.66, plus statutory interest and costs.

. Paragraph 7 of plaintiff’s attorney’s March 28, 2016 affirmation in support of plaintiff’s motion states, “Defendant(s) vacated the Premises on or about October 20, 2014.” Her affirmation fails to explain that defendant’s vacatur was the result of the issuance of a court-ordered warrant of eviction.

. For example, under the parties’ lease, an evicted tenant “must continue to pay rent, damages, loss and expenses without offset” even if the landlord relets the apartment and collects rent from the new tenant.

. LC Apts., LLC v Guzman (50 Misc 3d 1205[A], 2015 NY Slip Op 51921[U] [Monroe County Ct 2015]) is not to the contrary. Unlike the evicted defendant in this action, the residential defendant in that action voluntarily abandoned the premises. The Monroe County Court ruled that under those circumstances, a surrender by operation of law had not occurred, and therefore upheld the lease’s accelerated rent clause. Notably, the court did not consider whether the accelerated rent clause in that action was unconscionable.

. To the extent this lease provision is ambiguous, any ambiguity must be construed against plaintiff as the drafter of the lease. (See Guardian Life Ins. Co. of Am. v Schaefer, 70 NY2d 888, 890 [1987]; Agostinelli v Stein, 17 AD3d 982, 985 [4th Dept 2005]; see also LC Apts., LLC v Guzman, 2015 NY Slip Op 51921[U], *3 [unreasonable to charge tenant who had vacated property for subsequent utility services].)