[756 NYS2d 147]

DECOLATOR, COHEN & DIPRISCO, LLP, Appellant, v LYSAGHT,
LYSAGHT & KRAMER, P.C., Respondent.

First Department, February 18, 2003

## APPEARANCES OF COUNSEL

*David S. Gould* of counsel (*Joseph L. Decolator* on the brief; *Decolator, Cohen & DiPrisco, LLP,* attorneys), for appellant.

*Michael G. Kruzynski* of counsel (*Lewis, Johs, Avallone, Aviles & Kaufman, LLP,* attorneys), for respondent.

## OPINION OF THE COURT

SULLIVAN, J.

In this proceeding, petitioner, a successor law firm (the incoming attorneys) consisting of former associates of a firm (the outgoing attorneys) whose principals have been disbarred, seeks, inter alia, to apportion the contingent legal fee earned in a settled personal injury action in a manner that would limit the outgoing attorneys' compensation for services rendered prior to the disbarment to an amount calculated on an hourly rate, rather than a percentage of the fee. Although petitioner has framed the issue in terms of ethical considerations, what is before us is nothing more than a fee dispute.

The underlying personal injury action, *Farrell v City of New York*, was commenced in 1996 based on an October 3, 1995 trip and fall in a New York City Police Department station house by Lysaght, Lysaght and Kramer, P.C. (Lysaght), which had been retained by Ms. Farrell on a contingency basis shortly af-

ter the incident. In or about February 1997, during the pendency of the underlying action, James Lysaght and Peter Kramer, the sole shareholders of Lysaght, were indicted in the Southern District of New York for, inter alia, racketeering conspiracy. The alleged predicate acts were labor union bribery and kickbacks, acts which constituted class D felonies under New York's Penal Law §§ 180.15 and 180.25, in exchange for legal fees from Lysaght's major client, the New York City Transit Police Benevolent Association. Following a jury trial, on January 26, 1998, Lysaght and Kramer were found guilty of two counts of racketeering conspiracy in violation of 18 USC § 1962.[1] On September 18, 2000, having been suspended from the practice of law on May 27, 1999, they were disbarred, "effective immediately," on the basis of their felony convictions (*Matter of Lysaght*, 275 AD2d 97; *Matter of Kramer*, 275 AD2d 100; *see* Judiciary Law § 90 [4] [a], [e]). Immediately after the convictions of Lysaght and Kramer, several Lysaght associates, Marshall Trager, Linda Cronin and Christopher Byczek formed Trager Cronin and Byczek (TCB), and hired former Lysaght attorneys Joseph Decolator, who had supervised the Lysaght negligence practice, Neil Cohen and Dominic DiPrisco. By contract "entered into as of February 8, 1998, effective February 3, 1998," Lysaght entered into a written contract with TCB purporting to sell Lysaght's nonunion-related practice to TCB, specifically including "all client files * * * to the extent the client elects to remain a client of [TCB] in accordance with the provisions of § 1200.15-a of the New York State Disciplinary Rules," which, it should be noted, expressly applies only to the sale of a practice by a retiring attorney. On March 2, 1998, Ms. Farrell executed a substitution of attorneys naming TCB as her new attorneys.

In May 1998, Messrs. Decolator, Cohen and DiPrisco left TCB and formed their own firm, Decolator, Cohen & DiPrisco, LLP (DCD) and allegedly took with them 170 clients whose cases had originated with Lysaght. It is not disputed that on or about May 7, 1998, Farrell, who was one of these clients, discharged TCB and substituted Joseph Decolator as her attorney to prosecute her personal injury action. Thereafter, TCB notified DCD that it was asserting a charging lien for the contingent percentage of the legal work performed by it and Lysaght in the Farrell matter. Also in 1998, TCB commenced an action against Joseph Decolator in Supreme Court, Nassau

---

1. On June 30, 1998 Lysaght and Kramer were sentenced to 27 months imprisonment.

County, asserting a lien for attorneys' fees grounded on a theory of tortious interference with the February 8, 1998 agreement in the solicitation of TCB's clients. The action was dismissed on the merits. TCB did not appeal.

In February 2000, Lysaght sued TCB in Supreme Court, Nassau County, for over $8 million for failure to pay the contract price in accordance with the February 8, 1998 agreement for the sale of the law practice. That action was settled on December 19, 2001, as a part of which TCB assigned its liens on personal injury cases previously included in the sale of the practice to Lysaght and agreed to cooperate with Lysaght in enforcing these liens against the sums recovered and DCD.

In the interim, on or about March 21, 2001, the Farrell matter was settled for $75,000. DCD then commenced this proceeding pursuant to Judiciary Law § 475 seeking to deny Lysaght any share of the legal fees in the Farrell matter on the grounds of Lysaght's misconduct in entering into a "sham" contract to sell its practice to TCB and transferring all of its personal injury cases to TCB without client consent and before the February 8, 1998 sales agreement was executed. The petition also alleged that Lysaght had "enter[ed] into an unlawful and unethical agreement to sell its law practice to [TCB] after the principals of [Lysaght] had been convicted of felonies in Federal Court." Alternatively, DCD sought a hearing to determine the legal fee due Lysaght based on quantum meruit.

Lysaght answered the petition, interposing two counterclaims, one of which sought an accounting based on DCD's alleged failure to maintain that portion of the Farrell settlement proceeds representing attorneys' fees in a separate escrow account pending a final resolution of the fee dispute. Lysaght supported DCD's request for a hearing on the amount of legal fees due it, arguing that it was entitled to a percentage of the contingent fee based on the proportionate share of the work it performed. The motion court, after oral argument, decided in Lysaght's favor, adopting the reasoning of the Justices, who, in two separate actions (*Casey v Ruffino*, Index No. 44010/96; *Storms v Vargas*, Index No. 11801/88) in Supreme Court, Kings County, had rejected, on the ground of lack of standing, DCD's challenge to the legality of the February 8, 1998 contract between Lysaght and TCB, which, in any event, they held, was not dispositive of the compensation issue. In each case, the court held that Lysaght was entitled to be compensated on a

percentage basis for its proportionate share of the legal services it rendered. The court dismissed the petition.[2] We affirm.

Citing *Matter of Haber* (27 AD2d 576, *affd* 23 NY2d 763, *cert denied sub nom. Haber v Greason,* 394 US 975), which prohibits, as against public policy, an attorney facing imminent suspension or disbarment from disposing of his or her practice in a manner calculated to circumvent the effects of the impending sanction, DCD argues that Lysaght, by virtue of entering into such an illegal contract on February 8, 1998, forfeited any rights it might otherwise have for the legal work it performed on any of the 170 cases, including Farrell. Since, however, DCD is neither a party, an assignee nor an intended third-party beneficiary of the Lysaght/TCB contract, it lacks standing to challenge the validity of the contract.

It is well settled that in order to have standing to challenge a contract, a nonparty to the contract must either suffer direct harm flowing from the contract or be a third-party beneficiary thereof (*P.A. Bldg. Co. v City of New York*, 217 AD2d 417, *lv denied* 86 NY2d 708). Since DCD was not even in existence when the contract was entered into, it was not a party to the contract; nor does it claim third-party beneficiary status. Rather, it claims standing because it has allegedly suffered direct harm as a result of the agreement, which, it argues, has the effect of transforming Lysaght/TCB's liens from one for a quantum meruit fee into a lien for a percentage of the contingency fee. We reject this argument. Putting aside for the moment the merits of DCD's implicit conclusion that a claim to be compensated for legal services in quantum meruit cannot be calculated as a percentage of a contingency fee, the Lysaght/TCB agreement never contemplated the handling of this, or any of the 170 personal injury cases, by any firm other than TCB, provided that the client, in the first instance, elected to retain TCB. What the agreement did was to transfer Lysaght's rights to fees in all pending personal injury cases to TCB. Thus, TCB obtained what Lysaght had, a charging lien, a lien that was to be measured as a percentage of the client's recovery. Neither DCD nor any other subsequently retained counsel suffered any harm as a result of the Lysaght/TCB agreement. As subsequently retained counsel, DCD is entitled to a share of the contingency fee, calculated, no doubt, on its proportionate share of the overall work. The Lysaght/TCB agreement in no way affects DCD's right to such a fee.

---

**2.** In a subsequent order, dated August 26, 2002, the motion court directed a hearing on the issue of the amount of the fees due Lysaght as well as on its counterclaims.

In any event, assuming, arguendo, that the Lysaght/TCB contract was improper, Lysaght would still have a right to be compensated for the legal services it rendered in connection with the Farrell matter. In such circumstances, it would have a right to what it had in the first instance, a charging lien for services rendered calculated on the proportionate share of the contingency fee for the work it performed on the entire case. The contract between Lysaght and TCB did not change the value of the lien or the manner in which the fee earned by Lysaght for work performed before the disbarments was to be calculated. Of course, assuming, as we must in the absence of a legally cognizable challenge, the validity of the Lysaght/TCB contract, Lysaght, by virtue of TCB's subsequent return to it, by the assignment in settlement of the Nassau County action brought by Lysaght, of the charging lien for services rendered in the 170 negligence cases, would have a right to be compensated for the services it rendered in the Farrell matter.

DCD's related argument that, in any event, Lysaght has forfeited its right to any fee for the services it rendered by virtue of its misconduct, i.e., the disbarment of its principals, is without merit. A lawyer forfeits his entire fee due to misconduct only where the misconduct relates to the representation for which the fees are sought (*see e.g. Yannitelli v D. Yannitelli & Sons Constr. Corp.*, 247 AD2d 271, 272, *lv dismissed and denied* 92 NY2d 875; *Pessoni v Rabkin*, 220 AD2d 732). That is not the case here.

Nor is there merit to DCD's alternative argument that any fees recovered by Lysaght are to be calculated on a quantum meruit basis, which it construes to mean an hourly rate, and not on a percentage of the contingency fee. The governing principle on this question, in relevant part, provides, "A disbarred, suspended or resigned attorney may not share in any fee for legal services performed by another attorney during the period of his removal from the bar. A disbarred, suspended or resigned attorney may be compensated on a quantum meruit basis for legal services rendered and disbursements incurred by him prior to the effective date of the disbarment or suspension order or of his resignation. The amount and manner of payment of such compensation and recoverable disbursements shall be fixed by the court on the application of either the disbarred, suspended or resigned attorney or the new attorney, on notice to the other as well as on notice to the client" (Rules of App Div, 1st Dept [22 NYCRR] § 603.13 [b]; Rules of App Div, 2d Dept [22 NYCRR] § 691.10 [b]).

Nothing in the disciplinary rule governing the fee of a disbarred attorney for work performed prior to disbarment limits a recovery based on quantum meruit to an hourly rate. In *Rosenzweig v Gomez* (250 AD2d 664), the Second Department, in considering the fee of a suspended attorney for legal services rendered prior to the date of suspension, stated that the amount of the award "should be based upon evidence of the time and skill required in [the] case, the complexity of the matter, the attorney's experience, ability, and reputation, the client's benefit from the services, and the fee usually charged by other attorneys for similar services" (*id.* [citations omitted]). We see no reason to make a distinction, as DCD suggests, between a suspended and disbarred lawyer. Awarding Lysaght a percentage of the contingency fee earned in the Farrell matter based on the proportionate share of the overall services it performed before the disbarment of its principals is consistent with 22 NYCRR 603.13 (b) and does not, as DCD argues, result in fee sharing with a disbarred attorney for services performed by the successor lawyer.

We have considered DCD's other arguments and find that they are without merit.

Accordingly, the order of the Supreme Court, New York County (Jane Solomon, J.), entered June 14, 2002, which in a proceeding to determine rights to a legal fee earned in an underlying personal injury action, inter alia, effectively declared that respondent is entitled to a quantum meruit percentage of the total contingency fee collected by petitioner, should be affirmed, without costs or disbursements.

NARDELLI, J.P., ANDRIAS, BUCKLEY and FRIEDMAN, JJ., concur.

Order, Supreme Court, New York County, entered June 14, 2002, affirmed, without costs or disbursements.