■ LIDDLE, ROBINSON & SHOEMAKER, a Partnership in Dissolution, et al., Appellants-Respondents, v PAUL T. SHOEMAKER, Individually and as a Partner of LIDDLE, ROBINSON & SHOEMAKER, Respondent-Appellant, et al., Defendants. (And a Third-Party Action.) [785 NYS2d 70]—

Judgment, Supreme Court, New York County (Nicholas Doyle, Special Ref.), entered February 19, 2004, which awarded defendant Shoemaker the principal sum of $446,090.40, bringing up for review an order, same court and Referee, entered on or about November 13, 2003, which, to the extent challenged in the briefs, denied defendant Shoemaker prejudgment interest on recovery of his $150,000 capital account, limited his portion of recovery of the contingency fee in the *Petersen* account to $14,364.43, and limited the deduction from Shoemaker's recovery for overhead expenses to $15,320, unanimously affirmed, without costs. Cross appeals from the aforesaid order unanimously dismissed, without costs, as subsumed within the cross appeals from the judgment.

Although this Court's 2003 order of reference did not mention a calculation of prejudgment interest on Shoemaker's $150,000 capital contribution, he is not barred from raising the issue because it is "not inconsistent with" our referral order (309 AD2d 688 [2003]) or Partnership Law § 40 (4). In any event, we perceive no basis for awarding Shoemaker interest on his capital contribution for the period prior to the entry of the judgment (*see* Partnership Law § 40 [4]).

Relying on *Decolator, Cohen & DiPrisco v Lysaght, Lysaght & Kramer* (304 AD2d 86 [2003]), Shoemaker urges entitlement to a percentage of the contingency fee earned in the *Petersen* case, based on the proportionate share of overall services the predecessor firm had performed. We decline to consider this new legal theory, raised for the first time on appeal (*see Kent v Papert Cos.*, 289 AD2d 127, 128 [2001]). Were we to review the claim, however, we would find that contrary to Shoemaker's suggestion, the Referee was not required to allocate to the predecessor firm the proportionate share of the *Petersen* fee based on the

percentage of time charges, i.e., 17.36%. An outgoing attorney may "take the value of [his interest in] each contingent fee case at the time of dissolution with interest, or his partnership interest in such fee without interest and with a deduction for overhead, subject to the rule of *Kirsch v Leventhal* (181 AD2d 222, 226), that where a successful settlement of a pending contingency fee case post-dissolution is due to a surviving partner's 'postdissolution efforts, skill and diligence', the fee would not be 'attributable to the use of [plaintiff's] right in the property of the dissolved partnership' " (*Shandell v Katz*, 217 AD2d 472, 473 [1995] [some internal quotation marks deleted]; *accord Decolator, Cohen & DiPrisco v Lysaght, Lysaght & Kramer, supra*).

Although the predecessor firm may have spent 17.36% in time charges on the *Petersen* case, the record reflects that that percentage consisted of analyzing the type of case it was and evaluating whether a class action would be the most effective strategy. But the actual substantive work involved in effecting a settlement, which required much more hands-on legal investment, was the later contribution of plaintiffs. Under these circumstances, this aspect of the Referee's findings should be upheld (*Vastwin Invs. v Aquarius Media Corp.*, 295 AD2d 216, 217 [2002]).

Plaintiffs' contention that the Referee erred in rejecting their historical cost analysis of the predecessor firm's overhead charges is unpersuasive, since they failed to set forth sufficient information showing the extent to which they were entitled to an overhead credit. Plaintiffs cite the analogous case of *In re Barbera's Estate* (55 Ill 2d 235, 302 NE2d 302 [1973]), where there was no evidence to differentiate between overhead items related to the partnership and those related to work performed after dissolution; nor was there any testimony on which to base an allocation between old partnership files still open after Barbera's death and the surviving partner's new cases. But unlike *Barbera*, it is not sufficient simply to accept plaintiffs' figure representing the historical overhead costs without more. Here, where there is no indication that plaintiffs' accountant employed the overhead factor on only the open cases (*cf. Flynn v Cohn*, 154 Ill 2d 160, 607 NE2d 1236 [1992]), the record is devoid of any evidence as to the type of practice continued by plaintiffs, and how many law and compensation files they opened following Shoemaker's departure. Thus, the Referee's determination that plaintiffs, as the party submitting the account, failed to sustain their burden of proving, by a fair preponderance of the evidence, that their account was accurate and complete, was

supported by the record (*see Matter of Tract*, 284 AD2d 543 [2001]).

Since this was plaintiffs' second opportunity to prove their entitlement to a credit for overcharges, this Court declines to remand the matter for a third hearing. To the extent the Referee found, based solely on Shoemaker's admission in his posthearing papers, that plaintiffs were entitled to $15,320 for collection expenses, we decline to undermine the Referee's effort to award plaintiffs some compensation. Concur—Mazzarelli, J.P., Lerner, Friedman and Sweeny, JJ.