■ In the Matter of WINGATE, RUSSOTTI & SHAPIRO, LLP, Respondent, v FRIEDMAN, KHAFIF & ASSOCIATES, Appellant. [839 NYS2d 469]—

Order, Supreme Court, Bronx County (Betty Owen Stinson, J.), entered May 26, 2005, which, in a proceeding between successor and predecessor law firms involving the division of a fee for services rendered in a personal injury action, after a hearing, declared that respondent predecessor firm was not entitled to any part of the fee paid to petitioner successor firm, unanimously reversed, on the law and the facts, with costs, the predecessor firm, Friedman, Khafif & Associates is awarded 33 1/3% of $500,000 plus 30% of $92,469.24, and Wingate, Russotti & Shapiro, LLP is entitled to its negotiated share of the additional $350,000 received in the final settlement of the underlying personal injury action.

In October 2000, Pedro Colon was driving his truck when he was hit in the rear by a tractor trailer operated by William Cimasko and owned by Robert Sherwood. Colon suffered serious back and neck injuries requiring lumbar fusion and cervical spinal surgery. After his accident, Colon consulted a New Jersey attorney, Karim Arzadi, who advised him to retain Friedman, Khafif & Associates (the Friedman Firm) to represent him in New York. Colon signed an agreement with the Friedman Firm, to pay the following fees:

"33 1/3% of the first $500,000.00 net recovery;

"30% of the next $500,000.00 net recovery;

"25% of the next $500,000 net recovery.

"20% on the next $500,000 recovered.

"Fees on net recoveries exceeding $2,000,000.00 will be determined by the court."

In May 2001, the Friedman Firm commenced an action on Mr. Colon's behalf, demanding $1,000,000. The complaint did not contain a derivative claim on Mrs. Colon's behalf. Notes from Mr. Colon's intake interview with the Friedman Firm indicate that his marital status was "single." However, in March 2002, when Colon was deposed, he testified that he had been married since 1983 and that he had two children. There is also a marriage certificate in the record, indicating that Mr. Colon married Evelyn Torres on February 19, 1983. However, the record contains Mr. Colon's federal tax returns for 1997-2000. Mr. Colon filed each form 1040 under the category "head of household," without listing a spouse on any of the returns. Further, there is an "Accident Interview Form" in the record. On that form, in response to an inquiry as to marital status, the response is "single." At the fee hearing, Friedman testified that he was concerned about bringing a derivative claim on Mrs. Colon's behalf because there were documents in his file, including a workers' compensation form, in which his client had "sworn under oath to be single."

According to the affidavit of Mr. Friedman, submitted in opposition to Wingate's petition, Mr. Colon gave conflicting testimony as to an alleged prior car accident in 1996. Friedman also testified at the fee hearing that while the medical reports in the record give no indication of any injuries stemming from a 1996 accident, they do not indicate whether Mr. Colon's back injuries were solely attributable to his 2000 accident.

In March 2004, the Friedman Firm obtained a settlement offer of $575,000, and encouraged Mr. Colon to seriously consider it. At the fee hearing, Mr. Friedman testified that he told Mr. Colon that he should accept a settlement offer of $600,000. This, he said, was based upon the information in his file. He said he told Mr. Colon that otherwise he would need additional medical evidence to establish that all of Mr. Colon's back injuries were connected solely to the 2000 accident. In June 2002, the Friedman Firm filed a note of issue. On March 2, 2004, Friedman received an offer of $600,000 to settle the case. Friedman testified at the fee hearing that he made numerous attempts to contact Mr. Colon. He recounted that he finally reached his client on March 2, and that Mr. Colon agreed to appear in court the next day. However, Mr. Colon was not in court when the matter appeared on the March 3, 2004 calendar. The March 3 order is not in the record, but a March 10 letter to the court

from the Friedman Firm indicates that an order was entered on the 3rd, settling the case for $600,000, "subject to the approval of the client."

Meanwhile, Mr. Colon determined to seek a second opinion as to the advisability of entering into a $600,000 settlement. He consulted with the firm of Wingate, Russotti & Shapiro, LLP (the Wingate Firm). According to the Colons' testimony at the fee hearing, this was when they first discovered that the Friedman Firm had settled their case. The Wingate Firm also advised the Colons that there was no derivative claim for Mrs. Colon in the complaint.

Mr. Colon then discharged the Friedman Firm and substituted the Wingate Firm as counsel. The law firms exchanged a consent to change attorneys, and the Wingate Firm moved to vacate the conditional settlement. By order dated March 10, 2004, the court held that the "March 3, 2004 settlement subject to client approval" was vacated and the case restored to the calendar. On March 17, 2004, Friedman informed the Wingate Firm that it had incurred disbursements of $7,530.76. It added that:

"Upon receipt of our disbursements we shall forward the file to your office with the understanding that in the event we cannot resolve the issue of my firm's lien, that same be reserved to the Court upon the conclusion of this matter . . . .

"With regard to our attorney's lien, we have obtained a firm written offer in the amount of $600,000.00. In the event we cannot agree upon a lien it will be our position that we are entitled to a full fee on that offer."

On March 19, 2004, the Wingate Firm sent Friedman the sum requested for disbursements. With this payment, Wingate wrote to Friedman: "[u]pon my receipt and review of the file, I will contact you to discuss your attorney's fee. If we cannot come to a mutual agreement, the fee will abide the event and we will let the court decide this issue upon the conclusion of the matter."

One month after their retention, the Wingate Firm settled the matter for $950,000. It then brought the instant petition, seeking a declaration that the Friedman Firm was not entitled to legal fees. The IAS court issued an order, holding that if the parties did not agree upon a particular division of fees ($124,196 for the Wingate Firm and $192,470 for the Friedman Firm), it would hold a hearing on the issue of whether the Friedman Firm had been discharged for cause. Wingate rejected this offer, and a hearing ensued. The Colons also instituted a separate action against the Friedman Firm for malpractice in Kings County.

The court conducted the hearing over two days. It determined

that the Friedman Firm had been discharged for cause, and therefore forfeited its right to a fee. This, the court stated, was partially based upon the Friedman Firm's failure to bring a derivative claim on behalf of Mrs. Colon. The court also faulted the Friedman Firm for settling the case without Mr. Colon's consent, and for failing to timely file a retainer statement with the Office of Court Administration (OCA). We reverse.

When an action is commenced, the attorney appearing for a party obtains a lien upon his or her client's causes of action, claims, or counterclaims. This lien attaches to any final order or settlement in the client's favor (Judiciary Law § 475). Nevertheless, a client has an absolute right to discharge an attorney. If the discharge is based upon misconduct, the attorney automatically forfeits all rights to compensation (see Teichner v W & J Holsteins, 64 NY2d 977, 979 [1985]). However, forfeiture of the fee occurs only where "the misconduct relates to the representation for which the fees are sought" (Decolator, Cohen & DiPrisco v Lysaght, Lysaght & Kramer, 304 AD2d 86, 91 [2003]).

In the case of a fee dispute between outgoing and incoming attorneys, the outgoing attorney has the right to elect either immediate compensation based on quantum meruit for the reasonable value of the services rendered, or a contingent percentage fee to be determined at the conclusion of the litigation (see Lai Ling Cheng v Modansky Leasing Co., 73 NY2d 454, 458 [1989]; Matter of Gary E. Rosenberg, P.C. v McCormack, 250 AD2d 679, 679-680 [1998]; Schneebalg v Lincoln Sec. Life Ins. Co., 225 AD2d 684 [1996]). Where a firm has not elected to receive a fixed fee upon discharge, there is a presumption that the firm has instead chosen a proportionate share of a contingency fee (see Fernandez v New York City Health & Hosps. Corp., 238 AD2d 544, 545 [1997]).

Here, the IAS court erroneously concluded that the Friedman Firm had committed misconduct warranting forfeiture of its fee. First, the court faulted the Friedman Firm for failing to file a derivative claim on behalf of Mrs. Colon. However, the record reveals that Mr. Colon represented in his intake interview that he was single. Moreover, Mr. Colon's tax returns do not indicate whether or not he was married. Mr. Friedman explained at the hearing that he knew Mr. Colon had stated he was single on a workers' compensation claim, and that he was concerned that his client had made a false statement under oath. In light of these facts, it was entirely proper for the Friedman Firm to not bring a derivative claim on Mrs. Colon's behalf.

The court also concluded that the Friedman Firm had entered

into a final settlement without its client's consent. This is a misreading of the record, which shows that the March 3, 2004 settlement of $600,000 was not binding on Mr. Colon. Instead, Mr. Colon's approval was required before the settlement would become effective. Upon substitution of attorneys the conditional settlement was vacated and the case placed back on the trial calendar. The Colons were in no way prejudiced by the Friedman Firm's acts, which, in the circumstances, secured what then appeared to be an offer advantageous to the Colons.

Finally, the court faulted the Friedman Firm for failing to timely file a retainer statement with OCA. This error, which appears to be ministerial in nature, was corrected. The Friedman Firm filed the statement, which was accepted nunc pro tunc prior to the fee hearing, and had no effect upon the representation provided to the Colons.

As there was no evidence of misconduct on the part of the Friedman Firm in this matter, it should not be required to forfeit its fee (see Decolator v Lysaght, supra). The Friedman Firm had been working on Mr. Colon's case for approximately 3½ years before it was discharged. Its retainer required Mr. Colon to pay them 33⅓% of the first $500,000 of his recovery, and 30% of the next $500,000 net recovery. At the time that the Wingate Firm took over the litigation, Friedman had a firm offer of $600,000 to settle the matter.

The Wingate Firm worked for the Colons for one month and was able to enhance the settlement by some $350,000. However, it was the Friedman Firm which did all of the investigatory work, preparation of pleadings, and discovery. This included, but was not limited to, serving defendants with copies of all medical and hospital reports, appearing at a number of pretrial conferences, taking and defending depositions, negotiating with defendants' attorneys, preparing experts for trial, and scheduling, preparing for and conducting a mediation which was ultimately unsuccessful. Thus, the Friedman Firm, which did the bulk of the work on the case, has a right to a percentage of its former client's recovery. In the circumstances, we find it appropriate to award the Friedman Firm its share of the $600,000 settlement plus disbursements. The Wingate Firm is entitled to its negotiated share of the additional $350,000 received in the final settlement of the case. Concur—Mazzarelli, J.P., Friedman, Sullivan, Williams and Gonzalez, JJ.