■ LIDDLE, ROBINSON & SHOEMAKER, et al., Respondents-Appellants, v PAUL T. SHOEMAKER, Appellant-Respondent. LIDDLE, ROBINSON & SHOEMAKER, et al., Respondents, v PAUL T. SHOEMAKER, Appellant. [768 NYS2d 183] —Judgment, Supreme Court, New York County (Nicholas Doyle, Special Referee), entered August 2, 2001, which, in an action for an accounting of the affairs of plaintiff Liddle, Robinson & Shoemaker, awarded judgment in defendant's favor in the amount of $269,298.64, inclusive of costs and disbursements, and brings up for review an order (same court and Referee), dated December 22, 2000, as amended by an order (same court and Referee), dated February 13, 2001, to the extent appealed and cross-appealed from and as limited by the briefs, unanimously reversed, on the law and the facts, without costs, the judgment vacated, and the matter remanded for further proceedings not inconsistent with this decision and order. Appeal from judgment, same court and Referee, entered July 30, 2001, upon an oral decision of Barry Cozier, J., which after a nonjury trial, found defendant liable on a promissory note and awarded judgment to plaintiffs in the principal amount of $75,000, unanimously dismissed as abandoned, without costs.

Liddle & Robinson is the successor in interest to and is responsible for winding up the affairs of the law firms Liddle & O'Connor; Liddle, O'Connor, Finkelstein and Robinson; and plaintiff Liddle, Robinson & Shoemaker (plaintiff law firm).[1] Defendant joined plaintiff law firm's predecessor firm Liddle & O'Connor as a contract partner in 1987. In 1988, as a condition of becoming an equity partner, defendant was required to pay $150,000. Plaintiffs claim that this payment was not treated by the firm as, nor intended to be, a capital contribution.

In 1993, defendant requested a loan from the firm, which

---

1. Initially, this action was commenced by Liddle & Robinson, but it was substituted by plaintiffs Liddle, Robinson & Shoemaker, Jeffrey L. Liddle, Miriam M. Robinson, W. Dan Boone and Laurence S. Moy, suing individually and as partners of plaintiff law firm.

was approved. Defendant executed a promissory note payable to plaintiff law firm's predecessor Liddle, O'Connor, Finkelstein and Robinson. Defendant withdrew from the firm in February 1995 and immediately joined another. Defendant refused to pay on the promissory note, and this action followed.

Plaintiffs sued defendant to recover $75,000 on the promissory note and for an accounting. Defendant answered and counterclaimed for an accounting. With respect to the accounting, plaintiffs claimed that defendant had wrongfully retained fees on two specific matters and left plaintiff firm with a deficit in his capital account. Defendant maintained that plaintiffs refused his demands for an accounting and that he was entitled to a portion of the legal fees the firm had received since February 1995. Plaintiffs also alleged that all the partners, including defendant, had agreed that the profits would be allocated in specified percentages: as to each matter, 60% would be based on the work done, 30% would be based on the "origination" of the matter, i.e., who brought the business to the firm, and 10% would be discretionary (the 60:30:10 allocation agreement).

*The Promissory Note*

The separate issue of the promissory note was tried before Justice Cozier.[2] During the hearing, Justice Cozier stated that "we should proceed only with respect to the issue of the promissory note * * *" as the other issues, including the parties' respective accounting claims, defendant's equity interest in the firm at the time of his withdrawal, and the value of defendant's capital account were to be heard by a referee.[3] Although the court limited the scope of the trial to the validity of the note, evidence was nevertheless adduced regarding the $150,000 paid by defendant as a condition to his becoming an equity partner.

In particular, one of the plaintiffs, on cross-examination, spontaneously stated that he had asked defendant about his negative capital account and the promissory note and that defendant told him that he viewed the $150,000 he had paid as a capital contribution and the $75,000 he received before executing

---

2. Defendant does not challenge the monetary judgment entered July 30, 2001, which, upon the decision of Justice Cozier, found defendant liable on the promissory note.

3. Later in the hearing, the court further clarified its position: "It is not necessary to develop a record with respect to the general financial issues. That record will be made before the Special Referee at the point of the accounting, because I am not deciding those issues. I am not going to decide issues with respect to the equities here and the partnership. I'm hearing it with respect to the promissory note."

the note as a return of capital. The witness testified that he told defendant it was never recorded as such.

Defendant also testified during his direct case about his $150,000 capital contribution. He claimed that plaintiff Liddle had told him the $150,000 was a required capital contribution for his becoming an equity partner. Although Liddle had claimed that $120,000 had been paid to him personally (the other $30,000 going to O'Connor, the only other partner at the time), he admitted that he failed to declare the payment as personal income.

At the conclusion of the hearing, Justice Cozier found that plaintiffs were entitled to recovery on the promissory note, but stayed entry of judgment pending the referee report on the accounting. Although not relevant to the narrow hearing issue before it and despite the express limitation as to the scope of the trial, the court nevertheless concluded that "there is no question that [the $150,000] was never intended to be a capital contribution," observing that defendant's references to that payment as such and to the $75,000 loan proceeds as an offset were made only after defendant had received the $75,000.

*The Accounting*

Plaintiffs submitted an accounting of the firm's finances as of February 22, 1995. It recognized receivables and works in process as assets only to the extent they were actually paid as of May 2000. Defendant filed objections, which included the failure to include his $150,000 capital contribution as a firm asset.

A. *Partnership Share Allocation*

Defendant objected to plaintiffs' allotment of only 16.8% of the firm's assets, claiming he was entitled to 20%, i.e., an equal share under the Partnership Law. The record is replete with testimony regarding the 60:30:10 allocation agreement. Defendant's own accountant relied upon it in proposing a methodology for the allocation of contingency fee shares. Moreover, defendant admitted that when he became an equity partner he was told that participation was pursuant to the 60:30:10 allocation agreement. Accordingly, the referee correctly ruled that the partners' allocation agreement prevailed over the equal allocation rule provided by statute (*see* Partnership Law § 40) and that defendant was entitled to a 17.4% share of the partnership assets.

B. *Defendant's $150,000 Contribution*

At a hearing held before Special Referee Nicholas Doyle, defendant objected to the accounting on the ground that it failed to consider his capital contribution of $150,000 on becoming an

equity partner. Defendant testified that he was not required to make any capital contribution as a contract partner, but that when he became an equity partner, a $150,000 capital contribution was required. Because he lacked the financial resources, a loan from the law firm's bank was arranged. The funds were paid to the firm's only partners, Liddle and O'Connor, directly. There was no writing reflecting the agreement.

While plaintiffs' expert accountant, on cross-examination, initially opined that the $150,000 payment "was * * *a percentage of the profits of the entity going forward, not * * * a capital contribution," he conceded that he "really didn't understand the nature of the transaction." Defendant's expert testified that defendant's payment should be treated as a capital contribution, since there could be no other explanation for it.

The Referee ruled that the $150,000 was not a capital contribution. Rather than reviewing the evidence adduced on this issue at the hearing before him, the Referee instead relied on Justice Cozier's prior determination that "the $150,000 * * * was 'never considered to be a capital contribution.' " Therefore, the Referee concluded that Justice Cozier's "finding is the law of this case which [defendant] is collaterally estopped from re-litigating." In so ruling, the Referee stated that the issue was material and actually determined by Justice Cozier, and that defendant had a full opportunity to contest the issue.

However, we are not bound by the law of the case (*see Lipsztein v Donovan*, 289 AD2d 51, 52 [2001]), and, moreover, the Referee erred in giving Justice Cozier's finding preclusive effect in the subsequent hearing. The doctrine of collateral estoppel "precludes a party from relitigating 'an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point'" (*Kaufman v Eli Lilly & Co.*, 65 NY2d 449, 455 [1985], quoting *Gilberg v Barbieri*, 53 NY2d 285, 291 [1981]). Preclusion applies to "issues that were actually litigated, squarely addressed and specifically decided" (*Ross v Medical Liab. Mut. Ins. Co.*, 75 NY2d 825, 826 [1990]). Here, defendant did not have a full and fair opportunity to litigate the issue whether his $150,000 was a capital contribution. This capital contribution issue, as repeatedly stated by Justice Cozier, was not the focus of the hearing before him. Thus, the issue of capital contribution, although related to the issue to be ultimately determined by Justice Cozier, was not "material" to the determination of liability on the promissory note. Moreover, Justice Cozier's conclusion regarding the capital contribution did not "necessar-

ily decide[ ]" the issue before him (*Parker v Blauvelt Vol. Fire Co.*, 93 NY2d 343, 349 [1999]; *accord Ryan v New York Tel.*, 62 NY2d 494, 500 [1984]).

In any event, we find that there is no explanation for the $150,000 payment other than that it was a capital contribution. Plaintiffs' explanation defies both logic and common experience in partnership matters. Moreover, plaintiffs failed to articulate any basis, in support of their burden of proof as accounting fiduciaries, to distinguish between the money defendant paid in and the capital contributions credited to other partners. While we recognize that a deferential standard of review is normally applied for a nonjury trial, under these particular circumstances, we exercise our discretion on review to render an independent determination as the facts warrant (*see Marcus v Bressler*, 277 AD2d 108, 110 [2000]; *Matter of Allen v Black*, 275 AD2d 207, 209 [2000]; *Abrahami v UPC Constr. Co.*, 224 AD2d 231, 233 [1996]). Thus, we conclude that the Referee should have treated the $150,000 as a capital contribution.

## C. *Contingent Fee Matters*

Defendant claims the firm should have included as assets certain contingent fee matters that had been pending before he withdrew. At the hearing, defendant introduced evidence of four matters that were pending while he was a partner, in which the clients did not make payment until after his withdrawal (*Petersen, Albritton, Friedheim* and *Helie*). The Referee denied defendant's objection with respect to the contingency fees.

### *Petersen*

In *Petersen*, there was clear evidence that the partners performed work before defendant withdrew from the firm: they considered whether to bring the matter as a class action, they considered in which jurisdiction suit should be commenced, and the time records in evidence showed that they billed over 130 hours. There was also testimony that the settlement was the result of the "surviving" partners' ability to sign up enough complainants and pursue the settlement negotiations.

Pending contingency fee cases of a dissolved partnership, absent a contrary agreement, are assets subject to distribution (*see Shandell v Katz*, 217 AD2d 472, 473 [1995]). Indeed, a withdrawing partner is still entitled to a portion of the contingency fee, but not a right to a full partnership share. Defendant is "only entitled to 'the value of his interest at the date of dissolution * * * with interest, or, at his option * * * in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership' (Partnership Law § 73)"

predissolution (*Kirsch v Leventhal*, 181 AD2d 222, 226 [1992] [cited with approval by *Shandell*, 217 AD2d at 473]). Accordingly, the Referee erred in denying defendant any recovery on the *Petersen* file, and the matter is remanded for a determination of defendant's share.

*Albritton*

In the *Albritton* matter, the predecessor firm had commenced representing a client in connection with a claim against Salomon Brothers. Defendant testified at the hearing that he was familiar with *Albritton* because he had worked on it briefly. He identified a late 1991 exchange of letters between the client and the firm in which they negotiated a sliding/capped contingency fee, but the Referee did not allow the letters to be admitted into evidence because the client had not signed either of them.

The Referee should have admitted the two letters into evidence. They indicated that the initial contingency proposal was the client's, and the responsive letter from the firm confirmed that aspect of the letter, but sought to propose additional terms. In addition, the Referee should have allowed defendant to testify as to the precise terms of the contingency agreement since there was no dispute that Ms. Albritton had retained the firm on a contingency fee basis. Accordingly, the *Albritton* matter should be remanded for a determination as to the terms of the contingency agreement and defendant's share.

*Helie* and *Friedheim*

Defendant did not carry his burden of going forward with respect to the other two contingency matters, and the Referee correctly denied those objections. Although defendant did in fact offer retainer letters and time records on these matters, defendant's arguments as to these matters are sparse and the record insufficient to allow appellate review (*see Weckstein v Breitbart*, 111 AD2d 6, 8 [1985]).

D. *Collection Expenses of Accounts Receivable*

Plaintiffs' accounting included $1,666,736.47 as expenses incurred in collecting the accounts receivable. Plaintiffs' accountant testified the collection factor was high because the firm would not have been able to collect the receivables unless it continued to work on the matters; thus, the overhead charges included the maintenance of the law firm's office and retention of associates and staff. Defendant's accountant maintained that plaintiffs were "double accounting" as the claimed overhead represented operational costs of the successor law firm, and not just the costs of collection. The Referee concluded

that the 77.4% ratio of overhead to postwithdrawal collections was too high, ruled that defendant had proven his objection on this issue, and disallowed the entire amount.

While plaintiff law firm may have sought an excessive amount for expenses in collecting its fees, it was not automatic all the overhead should have been disallowed. Accordingly, the Referee's determination disallowing the entire cost of collection overhead should be vacated and the issue remanded for a determination of the appropriate amount to be allowed.

E. *Continued Accounting*

Defendant is entitled to a continued accounting for any fees received after May 2000 as uncollected fees of a dissolved partnership are assets subject to distribution (*see Jackson v Hunt, Hill & Betts*, 7 NY2d 180, 183 [1959]; *Goldberg v Wolman*, 59 AD2d 668 [1977]).

Accordingly, the judgment is vacated and the matter remanded to the Special Referee on the issues of: the extent of the contingency fee to be carried as a prewithdrawal asset in the *Petersen* matter; the terms of the contingency arrangement in *Albritton* and the amount, if any, to be carried as a prewithdrawal asset; the amount of overhead charges attributable to fee collections; and the continued accounting.

Reargument granted and, upon reargument, the decision and order of this Court entered herein on April 22, 2003 (304 AD2d 436 [2003]) is hereby recalled and vacated. Concur—Nardelli, J.P., Mazzarelli, Rosenberger and Marlow, JJ.