OPINION OF THE COURT
Mazzarelli, J.
Plaintiff is the owner of the building located at 201 West 86th *4 Street, known as the Belnord. In 1994, the previous owner of the Belnord and the tenants’ association entered into an agreement resolving various disputes, including, according to an affidavit by plaintiffs property manager, “the disputed rent regulation status of certain apartments.” In the agreement the previous owner acknowledged that the tenants were “rent controlled,” as that term was defined by applicable regulations. In 2006, the owner and the tenants’ association entered into a revised agreement (the new agreement), which superseded the 1994 agreement. The new agreement provided, in pertinent part, that the apartments of those tenants who signed the new agreement were no longer subject to rent regulation. It also provided that tenants who signed the new agreement would receive new 49-year leases, with an option to continue as month-to-month tenants for those who survived the 49-year term, with succession rights, as well as limits on annual increases in rents. The owner and each tenant who signed the new agreement were required to jointly submit a copy of the new agreement to the Division of Housing and Community Renewal (DHCR) and request that the agency issue an order pertaining to the respective apartment that would
“declare and determine that each [apartment] and all of the tenants, residents, and/or other occupants [thereof], shall be exempt from coverage by and/or applicability of the City Rent Law (a/k/a Rent Control), the Rent and [E]viction Regulations, the Rent Stabilization Law of 1969, as amended, the Emergency [T]enant Protection Act of 1974, as amended, and/or the Rent Stabilization Code.”
The new agreement provided that if DHCR did not issue orders containing the terms described therein within 120 days of the parties’ joint submission of the new agreement to DHCR, the agreement would become void. The new agreement further stated that
“neither the [tenants’ association], nor any of the signatories to this new agreement may oppose the application to DHCR, including but not limited to seeking a Petition for Administrative Review. Should the [tenants’ association] oppose the application or support any opposition to the application, then [the owner] shall be permitted to declare [tenants’ association] in breach of the New Agreement and void the agreement.”
*5 The new agreement separately provided that “[grandchildren and other descendente who are not children of the Settling Tenants) are not successor tenants and have no right of succession . . . , except where the grandchild is a resident of the apartment on the date of the New Agreement, and whose name is set forth in Exhibit C.” Additionally, an otherwise qualified person was only eligible to succeed to an apartment if he or she was “co-occupying the apartment as a joint primary residence with the Settling Tenant for the two years immediately preceding the Settling Tenant’s permanent vacatur therefrom.” Further, the new agreement required all tenants to maintain their apartments as their primary residence. The new agreement specified that a breach of this requirement would entitle the landlord to seek a remedy in court, including “rescission of the future benefits under the New Agreement to the Settling or Successor tenant, and/or recovery of possession of said Settling or Successor Tenant’s apartment.”
Defendant Jean Seward Uppman, the tenant of apartment 806 in the Belnord, executed the new agreement. In addition, her grandson, defendant Jonathan Vincent, signed the agreement underneath the words: “The following adult occupants of apartment [806], who may have rights to succession under rent control or rent stabilization rules that are terminated by this Agreement, waive those potential rights and acknowledge this Agreement.”
On November 15, 2006, DHCR mailed Uppman a one-page order. The order stated that
“the parties through tenants’ counsel advised that, as anticipated in a meeting with DHCR in January [ ] 2005 the owners and the tenants^] association finalized an agreement to modify the rents and status of the apartments occupied by the members of the association in return for certain consideration involving limitation on rents and terms of tenancy.”
The order explained:
“The new agreement anticipated the issuance of orders deregulating the apartments which are subject to the agreement. Each order would reference the agreement and the prior orders specifying that the regulatory status of the unit (most of which are rent controlled) will be terminated as of January 1, 2006 ....
*6 “DHCR then opened the above docket number as part of the process for the issuance of the order on the terms and conditions summarized above, issued a Notice of Commencement of Administrative Proceeding and gave the parties twenty (20) days to respond to the notice, after which such orders might be issued. No responses have been received.”
The DHCR order concluded that “this Order of Deregulation is issued and the prior regulatory status of the apartment as Rent Control is terminated effective January 1, 2006, subject to the [ajgreement and pursuant to its terms which are incorporated ... in this Order.”
Accompanying the DHCR order was a “Notice of Right to Administrative Review,” which set forth Uppman’s right to challenge the order and the time limitations for doing so. Neither Uppman nor Vincent ever filed a petition for administrative review. Indeed, Uppman entered into a new lease with plaintiff for a term of 49 years that incorporated the terms of the new agreement and noted that the premises are “not subject to rent regulation.” Uppman, who allegedly has Alzheimer’s disease, moved into a nursing home in November 2009.
Plaintiff commenced this action in 2011, seeking, inter alia, a judgment declaring that Uppman failed to maintain the apartment as her primary residence, and alleging that, upon such judgment, the lease and the new agreement “shall be deemed to be terminated, all future benefits under the Agreement shall be rescinded, and [Uppman] shall no longer be entitled to continued possession of the Apartment.” Plaintiff claims that all the other defendants, including Vincent, are not tenants of record of the apartment, notwithstanding any occupancy by such persons; thus, plaintiff seeks an order enjoining them from occupying the apartment. Plaintiff also seeks an order of ejectment of all persons occupying the apartment, and a judgment awarding it exclusive possession of the apartment.
Vincent’s verified answer asserts, as a first affirmative defense, that Uppman is a rent-controlled tenant of the apartment and that Vincent resided with her in the apartment for a period of more than two years before Uppman permanently moved into the nursing home. He admits that during his co-occupancy of the apartment there were “periods of time during which [he] was absent for educational reasons,” but contends that these absences did not “vitiate primary residency.” The first defense also claims that Vincent was a rent regulated ten *7 ant of the apartment, not only because of his co-occupancy, but also because plaintiff accepted rent subsequent to Uppman’s vacatur. Vincent further alleges that he was not a party to any proceeding brought by any agency seeking deregulation, and thus could not be bound by any deregulation order resulting from such a proceeding, and asserts that any purported waiver of rent regulation would be void as against public policy.
Vincent’s fourth affirmative defense asserts that plaintiff failed to serve a notice to cure and notice of termination, as required by applicable rent regulations. His combined first counterclaim and sixth affirmative defense seeks a judgment declaring him a rent-regulated tenant of the apartment and compensation for any rent overcharges. In support of this claim, he alleges that at all relevant times, plaintiff has been receiving a J-51 tax abatement, pursuant to Administrative Code of City of NY § 11-243, which disqualifies it from any efforts to deregulate. He also asserts that plaintiff improperly failed to offer him a renewal lease.
Uppman, through an appointed guardian ad litem, moved to dismiss the complaint as against her, contending that she was mentally incapable of defending against the action, was unable to leave her extended-care facility in Maryland to appear personally in a New York court, and was making no claim to possession of the apartment. Vincent moved for an order dismissing the action against the remaining defendants and for summary judgment dismissing the action as against himself. In support of his motion, Vincent argued that the action should have been commenced in Housing Court and that Supreme Court should decline to exercise jurisdiction. He further argued that the building’s current receipt of J-51 benefits precluded it from deregulating apartments, in light of Roberts v Tishman Speyer Props., L.P., (13 NY3d 270 [2009]) and its progeny. Finally, Vincent stated that plaintiff accepted his rent after Uppman moved, and was thus barred from contesting his tenancy. Vincent submitted an affidavit in support of his motion and appended his deposition transcript. He asserted that, based on his statements regarding when and how often he was present at the apartment, there could be no question that the apartment constituted his primary residence for purposes of either the applicable rent regulations or the new agreement.
Plaintiff opposed Uppman’s motion on the basis that, as the primary tenant on the lease, she was a necessary party to the action and her presence in the case was crucial to determining *8 Vincent’s right to occupy the apartment. Plaintiff opposed Vincent’s motion by arguing that discovery was still ongoing with respect to the primary residence issue, and that it hotly contested his position. Plaintiff further asserted that the DHCR order deregulating the apartment was the product of a lengthy negotiation between the previous owner and the tenants’ association, involving sophisticated counsel on both sides, and the cooperation of the agency. It further argued that collateral estoppel and the doctrine of administrative finality barred Vincent from relitigating DHCR’s order deregulating the apartment, since neither Vincent nor Uppman challenged the order administratively. With respect to the J-51 issue, plaintiff noted that “the Building was receiving J-51 tax benefits at the time of the DHCR Order, and Plaintiff has not received new J-51 benefits since April 2005.” Finally, plaintiff defended its decision to commence an action for declaratory relief in Supreme Court, instead of a summary proceeding in Civil Court. It first invoked the broad jurisdictional mandate of Supreme Court, which encompasses disputes between landlords and tenants. It further maintained that a declaration that Uppman breached the terms of the new agreement was consistent with the agreement, which provides that to regain occupancy plaintiff may terminate future benefits thereunder. Plaintiff interpreted the new agreement as permitting it to avoid rescinding the agreement itself, which it asserted it would have to do before it could proceed in Housing Court. Plaintiff incorporated these arguments into a separate motion for partial summary judgment dismissing, as concerns this appeal, Vincent’s first counterclaim and sixth affirmative defense, and his first and fourth affirmative defenses.
The motion court granted plaintiffs motion for partial summary judgment only to the extent of severing and dismissing Vincent’s first counterclaim and sixth affirmative defense and first and fourth affirmative defenses; denied Uppman’s motion to dismiss the complaint as against her; and denied Vincent’s motion for summary judgment. With respect to plaintiffs motion, the court agreed with plaintiff that Vincent could not challenge the apartment’s rent regulation status, since he had failed to pursue the relevant administrative remedies. The court added that Vincent admitted that he had been paying rent without objection since 2009 and was a signatory to the new agreement, and thus waived any challenge to the deregulation order. The court also credited plaintiffs argument that because it had not *9 received J-51 benefits in several years, there was no impediment to deregulation. Turning to Vincent’s motion, the court found “numerous” issues of fact, including whether Vincent maintained the apartment as his primary residence during the two years immediately preceding Uppman’s departure (2013 NY Slip Op 31195[U], *9). The questions identified by the court included whether and when plaintiff knew that Uppman had left the apartment and whether plaintiff gained knowledge of Vincent’s presence in the apartment. The court also noted that Vincent was a signatory to the new agreement and evidently knew that he was a potential successor, but the court found that it was “not clear what impact this knowledge, coupled with plaintiffs knowledge that Ms. Uppman had moved out of the apartment at least temporarily, placed on [plaintiff] to determine Mr. Vincent’s status in a more timely basis [sic]” (id.). The court found that Vincent “was the primary resident . . . for quite some time,” and noted that Vincent’s tax returns listed the apartment’s address as his own, but agreed with plaintiff that none of the above constituted “definitive proof of his primary residence” (id. at *10).
With regard to Uppman’s motion, the court rejected the argument that the complaint should be dismissed because she had not lived in the apartment for years and was incompetent. The court noted that the guardian ad litem was duly appointed for the purpose of this litigation pursuant to a court order upon a finding of Uppman’s incompetence, in accordance with CPLR 1201, which provides for the appointment of a guardian to appear in court proceedings in which a person is declared incompetent. The court also agreed with plaintiff that to dismiss the complaint against Uppman would be to decide a critical issue regarding the legal rights of Uppman and Vincent with respect to the apartment. Finally, the court rejected Vincent’s contention that the action should be litigated in Housing Court, noting that while Housing Court would have been a more appropriate forum, Supreme Court “has general jurisdiction, including over housing matters” (id.).
Vincent contends that the court improperly found that the DHCR order had collateral estoppel effect because there is no indication that the agency considered the propriety of deregulating the apartments on the merits. He also argues that the order is a nullity because the new agreement, on which it is based, is void as against public policy. We address the latter point first, because it is dispositive of the appeal.
*10 In Drucker v Mauro (30 AD3d 37, 39 [1st Dept 2006], appeal dismissed 7 NY3d 844 [2006]) this Court stated:
“It is well settled that the parties to a lease governing a rent-stabilized apartment cannot, by agreement, incorporate terms that compromise the integrity and enforcement of the Rent Stabilization Law. Any lease provision that subverts a protection afforded by the rent stabilization scheme is not merely voidable, but void (Rent Stabilization Code [9 NYCRR] § 2520.13), and this Court has uniformly thwarted attempts, whether by mutual consent or by contract of adhesion, to circumvent regulated rent máximums.”
Even an agreement that modifies the rent laws in a manner favorable to the tenant is of no effect (id. at 41). The new agreement does not merely modify the rent regulations; it declares them inapplicable to the apartment. Without question, then, the new agreement is void. We note that, although Drucker addressed only agreements to deregulate rent-stabilized apartments, there is no logical reason why the same principle should not apply to the rent-controlled apartment at issue here.
Plaintiff maintains that Drucker is inapposite because “it did not involve a docketed DHCR order that has already determined the regulatory status of an apartment.” This suggests that DHCR arrived at a decision to deregulate the apartment that was independent from the new agreement itself. However, there is no evidence to support this notion. It is clear from the plain language of the order that DHCR based its decision to deregulate the apartment on the new agreement only.
The fact that the new agreement and the DHCR order are so intertwined negates plaintiff’s collateral estoppel argument, which relies on Gersten v 56 7th Ave. LLC (88 AD3d 189, 201 [1st Dept 2011]). In Gersten, DHCR issued a luxury deregulation order, despite the fact that the landlord was receiving J-51 benefits at the time. After the Court of Appeals handed down Roberts, which held that J-51 benefits preclude luxury deregulation, the tenant commenced an action seeking retroactive application of its holding. This Court held that Roberts did in fact have retroactive effect and that no statute of limitations defense is available on the issue of whether an apartment is regulated (88 AD3d at 198, 200-201). However, this Court found that the tenant’s claim had to be dismissed, because the DHCR’s deregulation order had collateral estoppel effect. We stated:
*11 “Three of the elements necessary for the application of collateral estoppel cannot be seriously disputed here because (1) the issue before DHCR, whether the subject apartment was properly removed from rent stabilization by luxury decontrol, is identical to the issue before the motion court and this Court, (2) the issue was fully litigated, and (3) the issue was decided in the DHCR proceeding” (id. at 201).
However, Gersten is not controlling here, because in this case none of the three elements it requires are found. First, whether the apartment was subject to deregulation was hardly “before” DHCR, since there is no indication that the agency actually addressed the issue whether the apartment was eligible for deregulation. In Gersten, it had to determine whether the appropriate luxury decontrol requirements were met. Similarly, it cannot be said that the matter was fully “litigated” or “decided” as it was in Gersten, since there was no substantive issue before DHCR. Indeed, plaintiff does not suggest any basis for the agency’s decision to order the apartment deregulated, other than a simple rubber-stamping of the new agreement.
The new agreement’s requirement that the tenants apply to DHCR for a deregulation order appears to have been an attempt to lend the agreement the agency’s imprimatur and avoid its coming undone after the new leases were issued. However, public policy in the realm of rent regulation is strong and clear. Parties simply may not agree to ignore the rent laws, even for the most noble of purposes. Simply put, to condone the new agreement would be “indefensible,” since it would be “in violation of the well-established judicial policy of refusing to enforce agreements that are unlawful or injurious to the public, particularly where an attempt to circumvent the Rent Stabilization Law is concerned” (Drucker, 30 AD3d at 42). Because we find that the new agreement and the resulting order were void ab initio, we need not decide whether any receipt of J-51 benefits by plaintiff or its predecessor(s) barred the deregulation of rents at the Belnord.
This does not end the analysis because, even under rent control, Vincent is only entitled to succeed to the apartment if he can establish that he qualifies by having co-occupied the apartment as his primary residence with Uppman during the two years immediately preceding Uppman’s vacatur (see NY City Rent and Eviction Regulations [9 NYCRR] § 2204.6 [d]). *12 Generally speaking, a “conflict as to where the primary residence really is should be resolved at trial” (Coronet Props. Co. v Adelman, 112 AD2d 100, 100 [1st Dept 1985]). This is especially the case where there is some evidence that the person claiming succession rights had an occupancy interest somewhere else during the relevant time period (see Regina Metro. Co., LLC v Hartheimer, 40 Misc 3d 127[A], 2013 NY Slip Op 51044[U] [App Term, 1st Dept 2013]).
Vincent’s own deposition testimony and affidavit reveal that during one period in the two years preceding Uppman’s vacatur, he resided in Washington, D.C. three days per week to teach, and during another period had a two-day-per-week job. Vincent acknowledges that he filed tax returns in Washington, and maintained a bank account there. In addition, there is evidence that Vincent received mail at addresses other than the apartment during the subject time period. While we acknowledge that Vincent has possible explanations for these facts and documents that support his position that the apartment was his primary residence, we find that, on this record, it is impossible to determine the issue as a matter of law (see Kamvan Co. v Rammel, 132 Misc 2d 909 [App Term, 1st Dept 1986]).
An issue of fact similarly exists regarding whether plaintiff created a month-to-month tenancy by accepting Victor’s rent. Although the record contains a rent check that appears to be a rent payment by Vincent made out to plaintiff, plaintiff asserts that the check was returned to Vincent. Further, there is insufficient evidence to conclude that plaintiff accepted other rent payments, which were initially deposited in an account controlled by Uppman, with knowledge that Vincent was making the payments on his own behalf.
Vincent argues that, because it is undisputed that Uppman has not lived in the apartment for years, plaintiffs claim for judgment declaring that Uppman does not reside in the apartment is moot. However, in the context of a proceeding brought by a landlord seeking to terminate the rights of all existing tenants or licensees, this Court has held that even the death of the tenant of record does not obviate the need to join a representative of the tenant’s estate as a necessary party (see Westway Plaza Assoc. v Doe, 179 AD2d 408 [1st Dept 1992]). Plaintiff seeks the termination of Uppman’s lease on the ground that she breached the lease by failing to maintain the apartment as her primary residence. Accordingly, Uppman is a necessary party.
*13 Finally, although Supreme Court has “discretion [to] decline to review an action it considers appropriately brought in Civil Court,” it is not required to do so (see Chelsea 18 Partners, LP v Sheck Yee Mak, 90 AD3d 38, 41 [1st Dept 2011]). Moreover, “Supreme Court has unlimited general jurisdiction over all plenary real property actions, including those brought by a landlord against a tenant” (id.). Accordingly, this Court has held, in the context of such an action, that “it is for the plaintiff to determine how, and in which court, to plead its case” (id.). Here, unlike in Cox v J.D. Realty Assoc. (217 AD2d 179 [1st Dept 1995]), which Vincent relies on, a predicate notice had not yet been served, and the lease not yet terminated, when plaintiff commenced this action. Thus, the motion court properly concluded that it had jurisdiction over this matter.
Accordingly, the order of the Supreme Court, New York County (Louis B. York, J.), entered June 5, 2013, which granted plaintiffs motion for partial summary judgment to the extent of severing and dismissing defendant Jonathan Vincent’s first counterclaim and sixth affirmative defense, and first and fourth affirmative defenses, denied defendant Jean Seward Uppman’s motion to dismiss the complaint as against her, and denied Vincent’s motion for, inter alia, summary judgment dismissing the complaint as against him, should be modified, on the law, to deny plaintiffs motion, and otherwise affirmed, without costs.
Gonzalez, BJ., Acosta and Renwick, JJ., concur.
Order, Supreme Court, New York County, entered June 5, 2013, modified, on the law, to deny plaintiffs motion, and otherwise affirmed, without costs.