LESMHA LP v Vasquez (2024 NY Slip Op 50142(U))

[*1]

LESMHA LP v Vasquez

2024 NY Slip Op 50142(U)

Decided on February 14, 2024

Civil Court Of The City Of New York, New York County

Stoller, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 14, 2024
Civil Court of the City of New York, New York County

LESMHA LP, Petitioner,

against
Robert Vasquez, Respondent.

Index No. 305037/2021

For Petitioner: SK Heiberger by Jacqueline Handel-Harbour
For Respondent: Housing Conservation Coordinators by Hiram J. Lopez-Rodriguez

Jack Stoller, J.

LESMHA LP, the petitioner in this proceeding ("Petitioner") commenced this holdover proceeding against Robert Vasquez, the respondent in this proceeding ("Respondent"), seeking possession of 195 East 2nd Street, Apt. 3C, New York, New York ("the subject premises") on the allegation that the subject premises is subject to the Rent Stabilization Law and that Respondent failed to execute a renewal lease offer. Respondent interposed an answer raising a defense that Petitioner did not properly offer a lease and a counterclaim for rent overcharge. After a referral to the trial part, the parties stipulated to facts and submitted the matter to the Court pursuant to CPLR §409(b).
Stipulated facts
For purposes of the record, the Court considers the following documents: the petition (NYSCEF #1), the answer (NYSCEF #18), the parties' stipulation of facts (NYSCEF #78), and the exhibits that the parties incorporated by reference into their stipulation of facts.
The parties stipulated that Petitioner is Respondent's landlord.
The parties stipulated into evidence a regulatory agreement that was fully executed as of August 29, 1990 ("the 1990 Agreement"). The 1990 Agreement applies to the building in which the subject premises is located ("the Building"). The term of the 1990 Agreement is ninety-nine years. The 1990 Agreement states, inter alia, that an agency was financing a portion of a housing project at the Building pursuant to PHFL §1106 and that the owner of the Building shall comply with all provisions of 9 N.Y.C.R.R. §1900 et seq. The 1990 agreement further provided that the owner of the Building shall maintain a mix of tenants to assure that a certain percentage of tenants have low incomes to the extent economically feasible and that the owner of the Building shall establish a multi-tier system of rent schedule of the Building that includes market [*2]rents and below-market rents subject to the approval of a section of the New York State Division of Housing and Community Renewal ("DHCR").
The parties stipulated that Respondent signed a two-year lease for the subject premises commencing on November 13, 1992. Respondent alleges, and Petitioner disputes, that Respondent also signed a ninety-nine-year lease for the subject premises that commenced on the same day. Both leases provide that on expiration of the lease a month-to-month tenancy on the same terms and conditions as the leases will be created. Both leases provide that Respondent can only be evicted for cause. Both leases contain a number of provisions about rent-setting, as follows:
Paragraph 3(a) of both leases provides that Respondent's rent shall be set as a portion of his income. Paragraph 3(b) of both leases provides that Respondent's rent shall be set at 30% of his income. Paragraph 4(a) of both leases provides that Petitioner may change the rent based upon Petitioner's operating costs and other factors that Petitioner may reasonably consider, but that such a change would take effect thirty days after a meeting that Petitioner could initiate where Petitioner would have to document the proposed change in rent. Paragraph 4(b) of both leases provides that Petitioner can request a rent change by making a submission to the "Commissioner of Housing" for approval. Paragraph 9 of both leases provides that the rent shall be adjusted up or down during the term of the lease to conform to orders promulgated by the Rent Guidelines Board ("RGB") and that the parties agree to be bound by determinations of DHCR to increase the rent on Petitioner's application to do so, with a qualification.
The parties stipulated into evidence another regulatory agreement also applying to the Building that was fully executed as of December 14, 1992 ("the 1992 Agreement"). The 1992 Agreement provided, inter alia, that it amended and superseded the 1990 Agreement. The 1992 Agreement also had a term of 99 years. The 1992 Agreement contained provisions for multi-tiered rents and for housing low-income tenants that were the same as the 1990 Agreement. Like the 1990 Agreement, the 1992 Agreement provided that DHCR would set the rents after a submission from Petitioner. However, while the 1990 Agreement obligated the owner of the Building to comply with 9 N.Y.C.R.R. §1900 et seq., the 1992 Agreement obligated the owner of the Building to comply with 9 N.Y.C.R.R. §1920 et seq. 
The parties stipulated into evidence another regulatory agreement also applying to the Building that was fully executed as of May 13, 1994 ("the 1994 Agreement"). Like the 1992 Agreement, the 1994 Agreement stated that 9 N.Y.C.R.R. §1920 et seq. applies to the subject premises. The term of the 1994 Agreement lasts as long as the New York State Corporate Tax Credit Fund LP owns a partnership interest in Petitioner. The 1994 Agreement did not supersede the 1992 Agreement, but it provided that if any provision of the 1992 Agreement is inconsistent with Section 42 of the Internal Revenue Code, including rent levels, the effect of the inconsistent provision shall be suspended from enforcement during the longer of the 15-year period specified in Section 42(i)(1) of the federal tax code as currently in effect or the period during which an action of Petitioner can result in the loss of tax credits but no longer than 35 years.
The parties stipulated that Petitioner registered the subject premises with DHCR pursuant to 9 N.Y.C.R.R. §2528.3 starting in 1994; that Petitioner and Respondent entered into subsequent two-year lease renewals from 1994 through 2018 with rent increases set according to orders promulgated by the RGB; that the leases were on forms promulgated by DHCR for lease renewals for rent-stabilized apartments, except for leases in 2004, 2006, and 2008, the former two stating that the subject premises was not subject to the Rent Stabilization Law; that [*3]Petitioner offered Respondent a rent-stabilized lease commencing on December 1, 2020 with a rental amount which was not based on Respondent's income; and that Respondent did not sign the lease.
The parties also stipulated that Petitioner commenced and settled five nonpayment proceedings against Respondent where Respondent was not represented by counsel and that Petitioner commenced and settled a holdover proceeding based on an allegation of chronic nonpayment of rent where Respondent was represented by counsel.
Discussion
The Court cannot resolve on papers the parties' fact dispute as to whether Respondent signed a lease with a term of ninety-nine years. Be that as it may, the Court may not have to, as the practical effect of both the two-year lease and the ninety-nine-year lease are the same. Both leases provide that Petitioner requires cause to terminate Respondent's tenancy. Both leases provide for an initial amount of rent and then for subsequent rent increases. Both leases provide that on their expiration, Respondent's tenancy shall continue on a month-to-month basis. In other words, whether Respondent had a two-year lease or a ninety-nine-year lease, his tenancy would continue so long as Petitioner did not terminate Respondent's tenancy for cause and the rent could be adjusted periodically.
As to the rent increases in particular, both leases provide for rent increases pursuant to RGB orders during the term of the lease. However, a landlord of a rent-stabilized tenant cannot collect any rent in excess of the initial rent before the expiration of the initial lease. N.Y.C. Admin. Code §26-512(a).[FN1]
While leases in rent-stabilized apartments can contain clauses that are unenforceable because they are contrary to the law, Bandil Farms, Inc. v. DHCR, 190 AD3d 403, 405 (1st Dept. 2021), these lease provisions occasion a question of the applicability of the Rent Stabilization Law to the subject premises in the first instance.
At the commencement of Respondent's tenancy, the 1990 Agreement was in effect. The 1990 Agreement obligated Petitioner to comply with all provisions of 9 N.Y.C.R.R. §1900 et seq. Those regulations provide that rent increases after initial rents are subject to the Emergency Tenant Protection Act or Rent Stabilization Law, 9 N.Y.C.R.R. §1902.1(i), although those regulations apply the Rent Stabilization Law after the first vacancy after the expiration of the regulatory period. 9 N.Y.C.R.R. §1902.1(j). As Respondent continues to live in the subject premises since 1992, the record does not show any such vacancy as of this writing.
Moreover, the governing agreement changed with the onset of the superseding 1992 Agreement in the month following the commencement of Respondent's tenancy. The 1992 Agreement obligated the owner of the Building to comply with 9 N.Y.C.R.R. §1920 et seq. Nothing in 9 N.Y.C.R.R. §1920 et seq. provides for the applicability of the Rent Stabilization Law or the Emergency Tenant Protection Act to tenancies in the Building. More importantly, the regulations provide that adjustments to the basic rents for tenants who experience changes in income are permitted but may not be adjusted to equal a greater amount than 30 percent of their [*4]income. 9 N.Y.C.R.R. §1920.9(b)(4).[FN2]
The Rent Stabilization Code exempts from coverage housing accommodations for which rentals are fixed by DHCR unless, after the establishment of initial rents, the housing accommodations are made subject to the Rent Stabilization Law pursuant to the applicable law or agreement. 9 N.Y.C.R.R. §2520.11(c). As noted here, neither the 1990 Agreement, the 1992 Agreement, nor the applicable law provides for the application of the Rent Stabilization Law to this unit which, to be repetitive, has not yet experienced a vacancy since DHCR fixed the rent initially.
As the record does not show that the Rent Stabilization Law applies to the subject premises, Petitioner does not have a cause of action against Respondent for a cause specific to the Rent Stabilization Law. Respondent's long history of renewing rent-stabilized leases does not change this proposition, as the parties to a lease cannot agree to a rent regulatory status at variance with the statutory criteria thereto. 546 W. 156th St. HDFC v. Smalls, 43 AD3d 7, 12 (1st Dept. 2007), 230 E. 48th St. LLC v. Campisi, 59 Misc 3d 148(A)(App. Tern 1st Dept. 2018). As such, Respondent also does not have a viable counterclaim for a rent overcharge.
Even assuming arguendo that the Rent Stabilization Law applied to the subject premises, a tenant does not have to execute a rent-stabilized renewal lease if the landlord does not incorporate into the renewal lease the same terms and conditions as the expiring lease. Fishbein v. Mackay, 36 Misc 3d 1228(A)(Civ. Ct. NY Co. 2012). Both of the leases Respondent signed upon the commencement of his tenancy provided that Respondent's rent would be set according to a portion of his income. The renewal lease does not designate Respondent's rent in terms of his income. As a prima facie matter, then, Respondent shows cause to dismiss this proceeding.
Petitioner argues that the leases provide for rent increase according to RGB guidelines. Petitioner is correct, although this assertion does not completely state what the leases provide with regard to rent increases. The leases variously provide that Respondent's rent shall be set as a portion of Respondent's income and that Petitioner may change the rent thirty days after a meeting that Petitioner could initiate and that Petitioner can request a rent change by making a submission to the "Commissioner of Housing" and that RGB adjustments may change the rent during the term of the lease and that the parties agree to be bound by determinations of DHCR to increase the rent on Petitioner's application to do so. Taken together, these lease provisions are somewhat baroque and some of them sit uncomfortably with one another. What is clear, however, is that a mere increase of the rent as per RGB guidelines without regard to the balance of provisions of the lease is not incorporating the terms and conditions of the original lease into the renewals.
Petitioner argues that the Court cannot look back to leases signed in 1992 to make a determination on Respondent's defenses to Petitioner's cause of action for failure to renew a lease, at one point citing in support Regina Metro. Co., LLC v. NY State Div. of Hous. & Cmty. Renewal, 35 NY3d 332 (2020), which held that a retroactive application of the Housing Stability and Tenant Protection Act of 2019 ("HSTPA") violated due process insofar as HSTPA extended how far into the past a tribunal could look when determining overcharge claims. Even before the enactment of HSTPA, however, Courts could inspect a rental history as far in the past as necessary to determine the terms and conditions of an original lease, Portofino Realty Corp. v. [*5]NY State Div. of Hous. & Community Renewal, 2017 NY Slip Op. 32773(U)(S. Ct. Kings Co.), 2115 Washington Realty, LLC v. Hall, 55 Misc 3d 1213(A)(Civ. Ct. Bronx Co. 2017), because 9 N.Y.C.R.R. §2522.5(g)(1) incorporates the terms and conditions of an original lease into renewal leases, such that examination of an original lease is tantamount to an examination of a (more recent) renewal lease. Matter of Sugihara v State of NY Div. of Hous. & Community Renewal Off. of Rent Admin., 13 Misc 3d 1239(A)(S. Ct. NY Co. 2006).[FN3]

Petitioner argues that the dispositions of the parties' prior summary proceedings preclude a finding regarding leases signed in 1992. The doctrine of collateral estoppel prevents a party from relitigating an identical issue decided against that party in a prior adjudication. ABN AMRO Bank, N.V. v. MBIA Inc., 17 NY3d 208, 226 (2011). However, the party seeking to invoke collateral estoppel bears the burden of showing an identity of an issues between current and prior litigation. Matter of Dunn, 24 NY3d 699, 704 (2015). Petitioner does not show pleadings, orders, or stipulations from prior litigation which would demonstrate an identity of issues. In the absence of such supporting documentation, the record does not show that the parties actually litigated, squarely addressed and specifically decided the issues raised here, a showing required for the application of collateral estoppel. BT Holdings, LLC v. Village of Chester, 189 AD3d 754, 758 (2nd Dept. 2020), leave to appeal denied, 36 NY3d 912 (2021), Liddle, Robinson & Shoemaker v. Shoemaker, 309 AD2d 688, 691 (1st Dept. 2003).
The absence of supporting documents from prior litigation also affects any claim that the prior litigation judicially estops Respondent from litigating these issues here. The doctrine of judicial estoppel prevents a litigant from assuming a position in the present action contrary to a position that caused the litigant to secure a judgment in its favor in prior litigation. Carr v. Caputo, 114 AD3d 62, 71 (1st Dept. 2013), leave to appeal dismissed, 23 NY3d 996 (2014). The record does not show the outcome of the prior litigation, much less that Respondent obtained a judgment in his favor by assuming a particular position.
Accordingly, it is ordered that the Court dismisses both the petition and the counterclaims.
This constitutes the decision and order of the Court.
Dated: February 14, 2024
New York, New York
HON. JACK STOLLER
J.H.C.

Footnotes

Footnote 1:RGB orders also do not provide for rent increases during the term of a lease. The Court can take notice of RGB orders. See, e.g., Curry v. Battistotti, 5 Misc 3d 1012(A)(Civ. Ct. NY Co. 2004).

Footnote 2:Nothing in the 1994 Agreement conflicts with or addresses these clauses in the 1992 Agreement.

Footnote 3:This authority makes this finding in the context of determining whether a preferential rent continues into a renewal lease, but the principle is the same.