321-323-325 W. 42nd St. LLC v McMahan (2025 NY Slip Op 50284(U))

[*1]

321-323-325 W. 42nd St. LLC v McMahan

2025 NY Slip Op 50284(U)

Decided on March 3, 2025

Civil Court Of The City Of New York, New York County

Stoller, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 3, 2025
Civil Court of the City of New York, New York County

321-323-325 West 42nd Street LLC, Petitioner,

against
Robert McMahan, Respondents.

Index No. 302277-24/NY

For Petitioner: Jeremy Poland
For Respondent: Hallelujah Lewis-Flannoy

Jack Stoller, J.

321-323-325 West 42nd Street LLC, the petitioner in this proceeding ("Petitioner"), commenced this holdover proceeding against Robert McMahan, the respondent in this proceeding ("Respondent"), seeking possession of Apartment 3W ("the subject premises") within the building located at 323 West 42nd Street, New York, New York ("the subject building") on an allegation of termination of an unregulated tenancy. Respondent filed an answer alleging defenses and counterclaims including, inter alia, that the petition fails to allege the correct rent stabilization status. After a referral to the trial part, the parties stipulated to facts and submitted the matter to the Court for a decision.
Stipulated and undisputed facts
For purposes of the record, the Court considers the following documents: the petition (NYSCEF #1), the answer (NYSCEF #19), the parties' stipulation of facts (NYSCEF #52), and the exhibits that the parties incorporated by reference into their stipulation of facts.
Petitioner purchased the subject building from its predecessor, Thera Realty LLC ("Petitioner's predecessor") in March of 2023.[FN1]
The parties stipulated that at the time of conveyance, Respondent was tenant of record of the subject premises. Petitioner otherwise denies personal knowledge of Respondent's occupancy prior to the time of conveyance and denies personal knowledge to dispute any claims Respondent might raise in this respect.
Respondent alleged that he moved into the subject premises in 1998 pursuant to a sublease between Respondent and the then-tenant of record Greg Waller ("the Prior Tenant"), [*2]and that they renewed the sublease in 1999. The parties stipulated both subleases into evidence, along with an unsigned offer to renew a rent-stabilized lease dated August 15, 2001 naming Petitioner's predecessor as landlord and the Prior Tenant and Respondent as co-tenants. The parties stipulated into evidence a certified copy of history of registrations in the subject premises with the New York State Division of Housing and Community Renewal ("DHCR") pursuant to 9 N.Y.C.R.R. §2528.3, which showed that Petitioner's predecessor registered Respondent the sole rent-stabilized tenant of the subject premises from 2001 through 2021.[FN2]

The parties stipulated that in March of 1995 Petitioner's predecessor filed an application for Alt-1 Type work permits with the Department of Buildings ("DOB"). The parties stipulated into evidence a full set of documents in the job folder under Job Number #101001764, which were produced by DOB in response to a judicial subpoena. DOB approved the application in March of 1995. The proposed job start date was in May of 1995. Work-related activity (inspections, permit renewals, and amendments) continued through 2004. DOB issued a final certificate of occupancy ("C of O") on September 30, 2004.[FN3]

The parties stipulated that, in September of 2018, Petitioner's predecessor filed an application with DHCR under Docket Number GU410002UC to determine whether the subject building was permanently exempt from Rent Stabilization on the basis of substantial rehabilitation ("the DHCR Application"). A full set of documents and orders related to the DHCR Application were provided in response to a Freedom of Information Law ("FOIL") request and stipulated into evidence.
The DHCR file shows that in January of 2020, DHCR served Petitioner's predecessor with a Request for Additional Information/Evidence, directing Petitioner's predecessor to produce the following documents and information:
1. When did the current owner acquire the property? Submit a copy of the deed.
2. What caused the tenants to vacate the building? Did a fire take place? Submit the vacate order.
3. When did the rehabilitation begin and when was it completed?
4. Did any prior tenants re-occupy their apartments after Rehabilitation?
5. How much did the rehab cost? Submit any proof of payments such as invoices and cancelled checks.
6. A full-size copy of the architectural plans approved by DOB.
7. Copies of all inspection records and certifications to DOB and building-wide and apartment systems replaced in rehabilitation- plumbing, heating, gas, etc.
8. Did the owner file for and/or received [sic] any tax abatement or government financing for this project?
9. Provide a list of all current tenants and mailing labels for each.
Petitioner's predecessor produced the information and responsive documents in August 2020 after seeking several extensions to do so. In the letter addressed to the Rent Administrator ("RA"), Petitioner's predecessor stated that the subject building became vacant in 1993 due to substandard conditions; that the property was reoccupied in the beginning of 1995; that none of the former tenants reoccupied the subject building; that work began on March 14, 1995 and was completed prior to the expiration of the work permit on June 25, 1995; and that the approximate cost of the work was $230,000. The annexed documents included a deed, DHCR registration roll for 1995 and 1996, copies of documents contained in the DOB job folder, and a current list of tenants. Petitioner's predecessor also annexed a letter from Panagis Georgopoulos, the architect who was hired to oversee the renovations ("the Architect"). The Architect stated in his affidavit that "[a]lthough all the work was completed prior to the expiration of the work permit, final sign-offs were not submitted and certificates of occupancy were not issued until 2002 . . . .[FN4]
The delay in submitting the final sign-off and requesting a new certificate of occupancy was caused by a change in ownership and was unrelated to the actual completion date of the construction activities."
In December of 2020, DHCR served Respondent with a copy of the DHCR Application and annexed Notice of Commencement and a blank RTP-3 Answer Form. The Notice of Commencement stated that if Respondent wished to answer, the form must be returned in twenty days. The Notice of Commencement further stated, "Please note that this application may result in the issuance of an Order exempting the building/apartment from the Emergency Tenant Protection Act or the Rent Stabilization Law."
Respondent did not submit a response. The DHCR record contains just one answer, filed by the tenant of Apartment 5W within the subject building. The answer raised objections on the basis that the owner failed to show that the building was in substandard or seriously deteriorated condition, that the owner failed to provide proof of payment and photos of the subject building before the renovation, that violations in the subject building proved that the building systems did not comply with code, and that the owner waived its right to substantial rehabilitation by delaying the application and registering the units as rent stabilized.
By an order and determination dated May 19, 2022 ("the DHCR Order"), DHCR granted the DHCR Application. The determination relied on evidence submitted by Petitioner's predecessor including: "1) Architectural Plans. 2) Architect's Affidavit. 3) New Certificate of Occupancy. 4) Cost Affidavit. 5) Job Folder." Based on this evidence, the RA found the following:
"[DOB] approved the owner's application and plans for renovation under job# 101001764 on March 13, 1995. The New Certificate of Occupancy on file states that the [*3]work related to the application had been completed and signed off on September 30, 2004.
The scope of the work described in the Architect's Affidavit indicates that at least 75% of all building-wide and individual apartment systems, including common areas, were replaced.
There is no indication that the owner received any government financing or tax abatement for the project. The subject building is therefore exempt from regulation pursuant to Section 2520.11(e) of the Rent Stabilization Code."
Names and addresses of the tenants in the subject building, including Respondent, were listed at the bottom of the DHCR Order. The parties agree that the order makes no specific findings or carveouts with respect to any individual apartment. There is no effective date of the Order.
In May of 2024, during the pendency of this proceeding, Respondent filed a Petition for Administrative Review ("PAR") of the DHCR Order under Docket Number MQ4100023RT. Respondent raised objections, including that Respondent was not properly served with the notice of commencement and other notices, that the application contained false statements as to when the work was completed, that Respondent was in possession prior to completion of the work and was therefore a rent stabilized tenant, and that the work did not rise to the level of substantial rehabilitation. NYSCEF Doc. No. 25. By order and opinion dated July 9, 2024 (the "PAR Order"), Respondent's PAR was denied as untimely because Respondent's PAR failed to file the PAR within thirty-five days of the determination and service was determined to be proper. NYSCEF Doc. No. 47. The PAR Order did not address the merits of Respondent's appeal, or the merits of the underlying finding. Respondent did not bring an Article 78 petition or otherwise challenge the PAR Order.
Discussion
The outcome of this proceeding turns on Respondent's rent regulatory status, which itself turns on whether Respondent's possession of the subject premises at the time of the issuance of a certificate of occupancy entitles him to Rent Stabilization coverage and whether Respondent may raise this issue after the DHCR Order effectuated a deregulation of the subject building.
Even when an owner demonstrates that it has substantially rehabilitated a building, occupied rent regulated housing accommodations shall remain regulated until the tenant therein vacates. 9 N.Y.C.R.R. §2520(e)(5). See Ecco Land Corp. v NY State Div. of Hous. & Community Renewal, 11 AD3d 683 (2nd Dept 2004), Copeland v. NY State Div. of Hous. & Community Renewal, 164 Misc 2d 42 (S. Ct. NY Co. 1994)(Schoenfeld, J.). Petitioner argues that this exception does not apply to Respondent because he moved into the subject premises after the completion of the work, even if DOB issued the C of O after Respondent had already occupied the subject premises.
While Petitioner's predecessor represented to DHCR that it completed the work in June of 1995, the RA did not adopt that representation. Instead, the DHCR Order found that "[t]he New Certificate of Occupancy on file states that the work related to the application had been completed and signed off on September 30, 2004". Compare 8 Ave. Holdings LLC v. New York State Div. of Hous. and Community Renewal,— AD3d —, 2025 NY Slip Op. 00286 (App. Div. 1st Dept.)(DHCR does not necessarily adopt an owner's representation as to the date of [*4]completion of renovation work). Petitioner bears the affirmative burden of proving an exemption from Rent Stabilization on an allegation of substantial rehabilitation. 446 Realty Co. v. Higbie, 196 Misc 2d 109, 110 (App. Term 1st Dept. 2003), leave to appeal from the Appellate Term denied, 2004 NY App. Div. LEXIS 196, at *1 (1st Dept.), 867-871 Knickerbocker, LLC v. Poli, 65 Misc 3d 15, 17-18 (App. Term 2nd Dept. 2019). This record does not show that Petitioner met its burden of proving a completion of sorts in June of 1995. Indeed, permits in the record issued as late as 2003.
Even assuming arguendo that Petitioner "completed" the rehabilitation of the subject building in some legally significant fashion in 1995, a finding of substantial rehabilitation requires, inter alia, that an owner "must submit copies of the building's certificate of occupancy, if such certificate is required by law, before and after the rehabilitation." 9 N.Y.C.R.R. §2520.11(e)(4). Section III of DHCR's Operational Bulletin 95-2 [FN5]
 similarly requires owners to submit, inter alia, a "new Certificate of Occupancy". As the Court must strictly construe an exemption from Rent Stabilization by reason of substantial rehabilitation, Pape v. Doar, 160 AD2d 213, 215 (1st Dept. 1990), Cassorla v. Foster, 2 Misc 3d 65, 66-67 (App. Term 1st Dept. 2004), leave to appeal denied, 2004 NY App. Div. LEXIS 8905 (1st Dept. 2004), the applicable regulation and DHCR's bulletin combine to militate that a completion of a substantial rehabilitation entails a new certificate of occupancy. As the unrebutted admissible evidence in the record shows Respondent in occupancy before the new C of O herein in 2004, Respondent has established as a prima facie matter that he is exempted from deregulation as per 9 N.Y.C.R.R. §2520(e)(5).
Be that as it may, the DHCR Order granting the application to deem the subject building deregulated was not specific as to the subject premises. Petitioner argues that DHCR's silence as such precludes a finding that Respondent remains covered by Rent Stabilization.
The doctrine of collateral estoppel prevents a party from relitigating an identical issue decided against that party in a prior adjudication. ABN AMRO Bank, N.V. v. MBIA Inc., 17 NY3d 208, 226 (2011). However, collateral estoppel only applies to issues which were actually litigated, squarely addressed, and specifically decided. Ross v. Med. Liab. Mut. Ins. Co., 75 NY2d 825, 826 (1990), Liddle, Robinson & Shoemaker v. Shoemaker, 309 AD2d 688, 691 (1st Dept. 2003). The proponent of collateral estoppel therefore bears the burden of demonstrating that the tribunal necessarily decided an identical question in the prior litigation. Ryan v. New York Tel. Co., 62 NY2d 494, 501 (1984), Schwartz v. Pub. Adm'r of County of Bronx, 24 NY2d 65, 73 (1969). An "actual determination" of an issue requires that a party properly raise such an issue by the pleadings or otherwise placed it in before the tribunal. Halyalka v. Board of Regents, 72 NY2d 261, 268 (1988).[FN6]
The record does not show that DHCR made a [*5]determination as to Respondent's possession upon the completion of the rehabilitation of the subject building. Accordingly, Petitioner does not satisfy its burden of proving that element of collateral estoppel concerning identity of issue. The DHCR therefore does not collaterally estop Respondent from litigating the question of his occupancy of the subject premises before the issuance of the C of O.
Accordingly, it is
ORDERED that the Petition is dismissed with prejudice.
This constitutes the decision and order of this Court.
Dated: March 3, 2025
New York, New York
HON. JACK STOLLER
J.H.C.

Footnotes

Footnote 1:The parties did not expressly stipulate that Petitioner is owner of the subject premises and did not stipulate the deed into evidence. Respondent's answer did not raise any defenses or objections related to standing. Therefore, the Court considers the certified deed filed as NYSCEF Doc. #70.

Footnote 2:Respondent initially attached the DHCR rent history for a different premises in a different building, but attached the correct document to his reply brief. In the absence of any discernible prejudice to the Petitioner, the Court is vested with the authority to disregard the filing mistake. CPLR §2001, Tagliaferri v. Weiler, 1 NY3d 605, 606 (2004)(clerical errors should be disregarded).

Footnote 3:DOB issued Permit No. 101001764-01-AL for new plumbing fixtures, windows, kitchen and general construction on March 20, 1995 and issued Permit No. 101001764-01-PL for new plumbing fixtures, windows, kitchen and general construction on May 16, 1995. DOB renewed the permits on April 29, 2003 and again on August 7, 2003. NYSCEF Doc. Nos. 32 and 33. DOB approved the plan examination on July 16, 2004. The date of completion on the C of O is July 20, 2004.

Footnote 4:The sign-offs and certificate of occupancy were issued in 2004, not 2002, as the Architect stated in his affidavit.

Footnote 5:This bulletin sets forth the criteria to establish a substantial rehabilitation. Pavia v. New York State Div. of Hous. & Cmty. Renewal, 22 AD3d 393 (1st Dept. 2005), 449 W. 37 Realty LLC v. Herman, 62 Misc 3d 146(A)(App. Term 1st Dept. 2019).

Footnote 6:Significantly, the abbreviated character of DHCR's administrative proceedings can often operate to limit the collateral estoppel effect of DHCR orders. See, e.g., Extell Belnord LLC v. Uppman, 113 AD3d 1, 6 (1st Dept. 2013)(DHCR's deregulation order was not issued after a hearing where matters were actively litigated, but merely in response to an agreement that a landlord had presented to the agency for "rubber stamping"), First Ave. Vil. Corp. v. Harrison, 17 Misc 3d 20, 21 (App. Term 1st Dept. 2007)(Housing Court properly declined to give preclusive effect to a DHCR order which directed a tenant to sign a lease where the riders attached to the renewal were not squarely addressed and decided), Katz 737 Corp. v. Bernstein, 189 Misc 2d 179, 180 (App. Term 1st Dept. 2001)(Housing Court properly declined to give preclusive effect to "boilerplate" DHCR order deregulating premises where it is clear that the agency was not cognizant of the specific lease arrangement governing the use of the premises).